Charles **MELTZER** et al., Adm'r of the
Estate of Mark Finkelstein, et al., etc.

v.

**NATIONAL AIRLINES, INC.**

Civ. A. Nos. 28242, 28243, 29321–29347.

United States District Court
E. D. Pennsylvania.

May 8, 1962.

---

B. Nathaniel Richter, Philadelphia, Pa., for plaintiffs.

Owen B. Rhoads, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

On January 6, 1960, one of defendant's aircraft was bound for Florida on a nighttime flight from New York. While

flying over Bolivia, North Carolina, it was apparently destroyed in flight, and crashed near Wilmington, North Carolina. The lives of all on board were lost, and the 27 wrongful death actions in this case are one of the aftermaths.

The foregoing reference to the number of cases as being 27, despite the fact that there are 29 civil action numbers listed in the caption, is not an inadvertence: 28242 is duplicated by 29336, and 28243 by 29337. Explanation is to be found in the circumstance that the cases presently numbered 29321 through 29347 had been originally filed in a Pennsylvania Court of Common Pleas in Philadelphia. Two of the very same cases, however, had been at the same time filed in this United States District Court, as 28242 and 28243.

On motion of the defendant, all 27 cases filed in the state court were removed on diversity grounds to this Court, although the first-captioned cases were already pending here as Civil Actions numbers 28242 and 28243. Since the respective motions are identical in each one of the cases, and were argued as one by each side, they will hereafter be considered as one motion for defendant (to transfer), and one for plaintiffs (to dismiss without prejudice)—and the decision as to each will govern all.

Once the 27 cases had reached this Court via removal, defendant moved— pursuant to 28 U.S.C.A. § 1404(a) for transfer of all cases to the Eastern District of North Carolina. The death of our colleague, the Honorable Thomas C. Egan, before whom the motion was argued, occurred before he had decided the matter. It was after his death, but during the pendency of the motion to transfer, that plaintiffs moved for voluntary dismissal.

Shortly thereafter the plaintiffs in 22 of the cases commenced suits on the same causes of action in the United States District Court for the Southern District of New York. There, before the Hon. John F. X. McGohey, defendant moved to transfer the 22 cases to the United States District Court for the Eastern District of North Carolina or, in the alternative, to stay all further proceedings in the Southern District of New York. Attached to one of defendant's briefs is the opinion of Judge McGohey, October 20, 1961, 61 Civ. 2770, ordering that proceedings in the New York district be stayed pending disposition of the defendant's motion to transfer pending in this Court.

According to a list submitted by plaintiffs' attorneys on April 16, 1962, it appears that the list of these cases now pending in the Southern District of New York has grown to a total of 26. One of that number, corresponding to Nos. 29327 and 29328, was filed jointly. Since there are actually but 27 different cases here (eliminating the duplications already described), the 26 cases there represent, as result of the joint filing mentioned, a suit on behalf of each one of the present plaintiffs—according to counsel's list.

Counsel agree that the plane was apparently sabotaged by one Julian A. Frank, a passenger on the flight. It is a matter of notoriety that Julian Frank is supposed to have taken a live bomb aboard with him when he boarded the plane in New York.

Defendant says that the evidence of how the disaster occurred is to be found in the vicinity of Wilmington, North Carolina, in the district to which they seek transfer. They also point out that 18 of the parties plaintiff are residents of New York; six are residents of Connecticut; one is a resident of Cuba; and only two are residents of Pennsylvania.

Plaintiffs say that they are before the United States District Court for the Eastern District of Pennsylvania not by choice, but solely as the result of a removal granted at defendant's behest. They also assert that the operative factors which produced the disaster took place in New York at the airport from which the plane began its flight.

On the issue of damages, plaintiffs say that virtually all of these decedents were employed in the vicinity of New York, and that all evidence as to earnings, earning potential, habits and prospects of the decedents will have to come from witnesses and records to be found in the New York City area.

Plaintiffs' motion to dismiss is deemed by this Court to be dispositive of the cases, however, for which reason this statement of the contentions as to transfer, pro and con, need not be elaborated.

Since defendant has answered the complaints, the rule applicable to voluntary discontinuance is Rule 41(a) (2) Fed. R.Civ.P., 28 U.S.C.A.:

> [where answer or motion for summary judgment has been filed] " * * * an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. * * * Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

It was formerly well settled in federal tribunals that a plaintiff, subject to payment of costs, possessed the unqualified right to dismiss his complaint unless some plain legal prejudice would result to the defendant other than the mere prospect of second litigation upon the subject matter. Jones v. Securities & Exchange Commission, 298 U.S. 1, 19, 56 S.Ct. 654, 80 L.Ed. 1015 (1935); see, Pullman's Palace Car Co. v. Central Transportation Co., 171 U.S. 138, 145–146, 18 S.Ct. 808, 43 L.Ed. 108 (1897).

For the last 24 years, however, under Rule 41(a) (2), the granting of the voluntary dismissal has been subject to the court's discretion—no longer a matter of right. Piedmont Interstate Fair Ass'n v. Bean, 209 F.2d 942, 945 ff. (4th Cir. 1954); Ockert v. Union Barge Line Corp., 190 F.2d 303 (3rd Cir.1951); Young v. Wilky Carrier Corp., 150 F. 2d 764 (3rd Cir.1945); 5 Moore Fed. Practice p. 1018 (2d ed., 1951). It is ac-

cordingly proper to note that this matter has not gone beyond the pleading stage. Plaintiffs state that defendant has initiated no discovery, and nothing to the contrary appears. It is true that 27 cases were removed from the courts of the Commonwealth to this jurisdiction, but that activity in the progress of the case (if it may be called that) was entirely at defendant's instigation.

As the matter stands, it is entirely clear from the defendant's briefs and arguments that it does not want the cases to remain in this District; that it earnestly desires to have the cases transferred to the Eastern District of North Carolina; and that it does not wish the Southern District of New York to entertain jurisdiction. But those circumstances do not add up to the requisite clear showing of actual prejudice. Therrien v. New England Tel. & Tel. Co., 102 F.Supp. 350 (D.N.H.1951); Home Owners' Loan Corporation v. Huffman, 134 F.2d 314, cases collected at 317 (8th Cir.1943).

Defendant insists that this motion to discontinue without prejudice is a mere artifice to avoid transfer to the North Carolina District. This Court is indeed aware that it is duty bound, in considering this motion to dismiss, to consider the rights of the respective parties to the litigation. Piedmont Interstate Fair Ass'n v. Bean, 209 F.2d 942 (4th Cir.1954). But the cases in which prejudice sufficient to deny dismissal has been found—such as that last cited—are ones in which proceedings had progressed to stages very much more advanced than mere complaint and answer. Ockert v. Union Barge Line Corp., 190 F.2d 303 (3rd Cir.1951).

It goes without saying that when a defendant resists a plaintiff's motion to dismiss, he anticipates some kind of prejudice. It does not appear to this Court, however, that National Airlines, Inc., will suffer legally cognizable prejudice to a degree sufficient to bar plaintiffs' dismissal. Fair v. Trans World

Airlines, Inc., 22 F.R.D. 60 (E.D.Ill. 1957).

██ Rule 41(a) (2), Fed.R.Civ.P., heretofore quoted, authorizes dismissal "upon such terms and conditions as the court deems proper." It seems clear, under the rule and the cases cited during the course of this opinion—decided before and after the promulgation of the Federal Rules of Civil Procedure—that dismissal must be conditioned upon payment of court costs. See also cases collected in 5 Moore Fed.Practice 1025 et seq. (2d Ed., 1951 and cum. supp. 1961).

Whether "terms and conditions" shall include payment of reasonable counsel fees is the final question. One court stated that matter as follows:

"* * * no 'terms and conditions' are conceivable except such as are calculated to compensate the defendant for the expense to which he has been put. * * *" McCann v. Bentley Stores Corp., 34 F.Supp. 234 (W.D.Mo.1940).

██ There has been no suggestion here, however, that defendant has been put to any expense beyond that of legal representation. Of course, an award of attorney fees to a successful defendant would certainly not be a part of the costs payable by plaintiff at the end of a trial, however strenuous or lengthy. Lunn v. United Aircraft Corporation, 26 F.R.D. 12, 17 (D.Del.1960). Nevertheless, and despite that seeming anomaly, the award of reasonable attorney fees, as a condition of voluntary dismissal, in the discretion of the court, is not only permissible but quite common.

The case last cited appears to be the most recent discussion of such awards. Collecting an imposing list of authorities, the Court there said:

"* * * I must bow to the weight of authority and hold that counsel fees may be allowed as a 'term or condition' for voluntary dismissal under Rule 41(a) (2)."

Lunn v. United Aircraft Corporation, 26 F.R.D. 12, 18 (D.Del.1960).

This Court takes note of the fact that the present cases were originally filed in January of 1961 (in the state court). It is true that circumstances beyond the control of plaintiffs have to some degree contributed to the numerous postponements and continuances of these causes. Defendant, however, says in essence that plaintiffs have been dragging their feet. On April 18, 1962, defendant's counsel wrote:

"Granting plaintiff's motions to dismiss would prejudice defendant by adding further delay to the disposition of plaintiffs' claims against it. It has been a full year since defendant's motions to transfer these cases to the District of North Carolina were first filed. Despite defendant's efforts to obtain a suitable forum for the trial of these actions promptly, plaintiffs delayed a full seven months before filing motions to dismiss and postponed argument on these motions when it was scheduled for last December. If plaintiffs' motions to dismiss are granted, the efforts of the defendant and this court over the course of an entire year will have resulted in contributing absolutely nothing to advancing this litigation."

Defendant further says that the following language, quoted from Henderson v. American Airlines, 91 F.Supp. 191, 192 (S.D.N.Y.1950), is squarely applicable:

"* * * There is also present here the element of 'shopping around' by the plaintiffs not for a convenient forum but for one to their liking. * * *"

Defendant also urges the inconsistency of the plaintiffs' position in that their original choice of forum was the Philadelphia Court of Common Pleas. Yet they are now stressing the fact that they are, for the most part, "New Yorkers" and, as Judge McGohey noted, insisting

that " 'the doors of the federal court in New York' should not be closed to them." Merrill v. National Airlines, Inc., 61 Civ. 2770 (S.D.N.Y.1961; unreported).

■ The foregoing statement of the characterizations of plaintiffs' stratagems by defendant is a necessary prelude to an attempt to evaluate them. Under the law, these comparative hardships of the parties must be weighed. Piedmont Interstate Fair Ass'n v. Bean, 209 F.2d 942 and cases collected and discussed at 946 (4th Cir.1954). It is accordingly noted that since the untimely death of Judge Egan in July of 1961, one or both of the present motions has been set for argument before this present Court and judge on at least three occasions: November 6, 1961; December 11, 1961; and the date on which argument was finally heard, April 16, 1962. Since preparation for each listing has involved the assembling of these files, as well as the study of the motions, briefs, and supplemental briefs of the respective parties, this Court has some basis for gauging the time and effort expended by counsel.

■ It has already been decided that the inconvenience or anticipated prejudice to defendant does not warrant denial of plaintiffs' withdrawal. That is not to say that this Court feels defendant's objections to voluntary dismissal to be meritless. To the contrary, and as the result of judicial contact with these cases for more than six months, the Court feels that in simple fairness the plaintiffs should be required to pay part of defendant's attorney fees for the trip around Robin Hood's Barn. See Lawson v. Moore, 29 F.Supp. 175 (W.D.Va.1939).

On the amount of allowable attorneys' fees, it is noted that defendant has made two appearances in court for motion arguments. Yet the wholesale character of this case, involving 29 separate civil actions, necessarily involved a considerable amount of detail work. Under all the circumstances, accordingly, an award of $300 as reasonable attorney fees is deemed justified.

In addition to the costs of the cases, to be computed by the Clerk of Court, the plaintiffs should pay to the defendant the sum of $300 on account of counsel fees and upon this payment to the defendant the motion for voluntary dismissal will be granted and the defendant's motion for transfer will be denied. When these conditions have been met an appropriate order may be submitted.