DUNN, and others, Plaintiffs-Respondents, v. FRED A. MIKKELSON, INC., and others, Defendants-Appellants.

Supreme Court

*No. 76–168. Argued January 2, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 748.)

For the appellants there were briefs by *Robert A. Teper, Joseph F. Wresching* and *Teper, Fiorenza, Weiss & Teper, S.C.,* and oral argument by *Paul Prentiss,* all of Milwaukee.

For the respondents there was a brief by *Gordon K. Aaron* and *Axel, Aaron & Goldman,* and oral argument by *Gordon K. Aaron,* all of Milwaukee.

DAY, J.   The defendants Fred A. Mikkelson, Inc. et al. appeal a part of an order dismissing the action brought by the plaintiffs Warren H. Dunn, et al., entered August 30, 1976 in the circuit court of Milwaukee County, the Honorable Richard W. Orton, presiding.

The questions before us are:

1.   Should the standard of review of the terms and conditions of a voluntary dismissal under Rule 805.04(2) be limited to abuse of discretion, or should this court undertake an independent review of attorney's fees awarded under that rule?

2.   Did the trial court abuse its discretion in requiring the plaintiffs to pay only a portion of the defendants' attorneys' fees as terms and conditions of dismissal?

3. Should this court impose or deny costs against the defendants for preparing an allegedly defective appendix and for including material in their brief not in the record below?

By this appeal, the appellants (defendants below) seek to recover all of the $5,612.00 paid by them for attorney fees and $104.70 disbursements as defendants in the court below.

This case began when the plaintiffs, a group of homeowners in River Edge Estates, (hereafter the homeowners) sued the developers of their parcels (hereafter the developers), alleging that the developers had developed River Edge Estates in a fraudulent and conspiratorial manner. River Edge Estates is a subdivision of the City of Glendale, Milwaukee County. The homeowners own lots in River Edge Estates upon which homes have been built.

The parcel of land which became River Edge Estates was purchased and subdivided in 1972 by defendants Fred A. Mikkelson, Inc. and Bluemound Holding Corporation. Fred A. Mikkelson, Inc. is a Wisconsin corporation engaged in housing construction; Bluemound Holding Corporation is a Wisconsin corporation engaged in real estate investment and development. Defendant Jack Mikkelson is a shareholder in both corporations, and a licensed real estate broker. Defendant Betty Reimer, also a licensed real estate broker, is an employee of Fred A. Mikkelson, Inc.

On August 9, 1972, Fred A. Mikkelson, Inc. and Bluemound Holding corporation executed an agreement restricting the use of the land in the subdivision. The agreement stated in its purpose as follows:

"The purpose of this declaration is to insure the best use and most appropriate development and improvement of each building site thereof; to protect owners of building sites against such use of surrounding building sites as will detract from the residential value of their property; to preserve, so far as practicable, the natural beauty of said property; to guard against the erection

thereon of poorly designed or proportioned structures; to obtain harmonious use of material and color schemes; to insure the highest and best residential development of said property; to encourage and secure the erection of attractive homes thereon, with appropriate locations thereof on building sites; to prevent haphazard and inharmonious improvement of building sites; to secure and maintain proper setbacks from street, and adequate free spaces between structures; and in general to provide adequately for a high type and quality of improvement in said property, and thereby to preserve, and inhance (sic) the values of investments made by purchasers of building sites therein. All lots in the Subdivision shall be subject to all ordinances, zoning laws and other restrictions of the City of Glendale, Milwaukee County and State of Wisconsin, applicable thereto."

A three-member Architectural Control Committee was established to administer the agreement. Jack Mikkelson and Betty Reimer were appointed to the committee. A Mr. George Heider was designated as the third member of the committee. However, in an affidavit Mr. Heider said he was not a member of the committee and had never participated in any of its activities. He is not a party to this action.

In their original complaint, the plaintiff homeowners sought to bring a class action against the developers, alleging that the defendants had "fraudulently conspired together, either as individuals or through their agents and employees, to breach said covenants, conditions, and restrictions, in disregard of their stated obligations and responsibilities and the stated fiduciary responsibilities of the members of the Architectural Control Committee." As a result of this conspiracy, the plaintiff homeowners alleged that Fred A. Mikkelson, Inc. had been allowed to construct "many duplicate models of inferior design and proportion, with poor color schemes and excessive use of many details, and overuse of certain materials, as well as the placement of certain dwellings on certain

lots in a manner which detracts from market value of all properties within the subdivision. . . ."

The defendant developers challenged the appropriateness of a class action. After oral arguments before the Honorable Gordon Myse on August 15, 1975, the trial court dissolved an order restraining the members of the Architectural Control Committee from approving construction plans for new homes in River Edge Estates. He also gave the plaintiff homeowners leave to amend their complaint and to decide whether or not they wanted to proceed with the class action suit.

Instead of refiling a class action suit, the homeowners filed an amended complaint as individuals on October 16, 1975, alleging fraud, conspiracy, and breach of warranties. The defendant developers demurred on the grounds that the complaint did not state facts sufficient to constitute a cause of action, and that there was a misjoinder of claims. A hearing was held before the Honorable Richard W. Orton January 12, 1976. The demurrers were sustained.

The homeowners' second amended complaint was filed February 19, 1976, alleging conspiracy, misrepresentation and breach of fiduciary duties. The defendant developers again demurred. Judge Orton again sustained the demurrers, on the grounds that each cause of action contained allegations on information and belief when the allegations should have been within the plaintiffs' personal knowledge, and also on the ground that there had been a misjoinder of causes of actions. The sufficiency of the complaint is not before this court on appeal. The homeowners were given twenty days to serve a third amended complaint.

Instead of filing a third amended complaint, the homeowners moved for a voluntary dismissal without prejudice under Sec. 805.04(2), Stats. 1975.[1] Oral argument

---

[1] "805.04. **Voluntary dismissal: effect thereof.** (1) BY PLAINTIFF; BY STIPULATION. An action may be dismissed by the plaintiff

was held before Judge Orton on June 4, 1976. The defendant developers contended that the plaintiff homeowners should pay all of defendants' legal costs and disbursements, including reasonable attorney fees, totaling $5,600.70,[2] as a condition of dismissal. Counsel for the defendants brought copies of billing statements and time slips, and in sworn testimony reviewed them before the trial court.

The trial court granted the voluntary dismissal without prejudice. He imposed the payment of $800 by the plaintiffs to the defendants as a term and condition of dismissal. He had given the plaintiffs the alternative of amending their pleadings on payment of $200 costs, but the plaintiffs chose to take the voluntary dismissal instead. The defendant developers seek to recover the remaining portion of their legal expenses not included in the order of dismissal.

The first question is:

SHOULD THE STANDARD OF REVIEW OF THE TERMS AND CONDITIONS OF A VOLUNTARY DISMISSAL UNDER RULE 805.04(2) BE LIMITED TO ABUSE OF DISCRETION, OR SHOULD THIS

without order of court by serving and filing a notice of dismissal at any time before service by an adverse party of responsive pleading or motion or by the filing of a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is not on the merits, except that a notice of dismissal operates as an adjudication on the merits when filed by a plaintiff who has once dismissed in any court an action based on or including the same claim.

"(2) BY ORDER OF COURT. Except as provided in sub. (1), an action shall not be dismissed at the plaintiff's instance save upon order of court and upon such terms and conditions as the court deems proper. Unless otherwise specified in the order, a dismissal under this subsection is not on the merits."

[2] The $5,716.70 requested in the defendant developers' brief includes the expenses connected with the June 4, 1976 hearing.

COURT UNDERTAKE AN INDEPENDENT REVIEW OF ATTORNEY'S FEES AWARDED UNDER THAT RULE?

Sec. 805.04(2), Stats. 1975 allowing a plaintiff to voluntarily dismiss his action without prejudice is generally equivalent to Federal Rule of Civil Procedure 41(a)(2).[3] See Judicial Council Committee's Note—1974 to Rule 805.04.

Sub. (1) of sec. 805.04 sets out the circumstances under which a plaintiff may dismiss his action without leave of court. See Graczyk, *The New Wisconsin Rules of Civil Procedure: Chapters 805–807*, 59 Marquette L. Rev. 671 (1976). Once the defendant has either filed a responsive pleading or motion, however, a plaintiff may obtain a voluntary dismissal only "upon order of court

---

[3] "Fed. Rule Civ. P. 41. *Dismissal Of Actions.* (a) *Voluntary Dismissal: Effect Thereof.* (1) *By Plaintiff; By Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

"(2) *By Order Of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice."

and upon such terms and conditions as the court deems proper." Unless the court specifies to the contrary, a dismissal under 805.04(2) is not on the merits.

Sec. 805.04(2), like its federal counterpart is essentially a rule of fairness to protect the defendant from prejudice when the plaintiff seeks to discontinue his action without an adjudication of the merits:

"The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced. The rule allows the plaintiff to withdraw his action from the court without prejudice to future litigation. Allowing the court to attach conditions to the order of dismissal prevents defendants from being unfairly affected by such dismissal." 9 Wright & Miller, *Federal Practice & Procedure; Civil,* Sec. 2364, at 165 (1971).

Prior to the adoption of the Federal Rules of Civil Procedure, a plaintiff in federal courts had an unqualified right to dismiss his complaint unless some plain legal prejudice would result to the defendant other than the mere prospect of a second lawsuit on the same subject matter. *Meltzer v. National Airlines, Inc.,* 31 F.R.D. 47, 49 (E.D. Pa. 1962); *Welter v. E. I. DuPont de Nemours & Co.,* 1 F.R.D. 551, 553 (D. Minn. 1941). However, under Rule 41(a)(2), the granting of a voluntary dismissal is not a matter of right, but a subject of the court's discretion. *Meltzer, supra,* at 49; *LeCompte v. Mr. Chip, Inc.,* 528 F.2d 601, 604 (5th Cir. 1976).

The danger of harassment of the defendant is "present in any instance in which a defendant is damaged by being dragged into court and put to expense with no chance whatever (if there is a dismissal without prejudice) of having the suit determined in his favor. The dismissal without prejudice means the defendant has been put to expense literally for nothing." *McCann v.*

*Bentley Stores Corp.*, 34 F. Supp. 234 (W.D. Mo. 1940). The purpose of Rule 41(a)(2) in requiring the plaintiff to comply with the "terms and conditions" set by the court in order to take a voluntary dismissal is to protect the defendant from economic prejudice. *Welter, supra*, 1 F.R.D. at 553–554.

Under Rule 41(a)(2), a voluntary dismissal may be conditioned on the payment of the defendant's attorney's fees. *Meltzer, supra*, 31 F.R.D. at 50.

The *McCann* case took the view that "no 'terms and conditions' are conceivable except such as are calculated to compensate the defendant for the expense to which he has been put." *Id.* at 235. The view of the federal courts on the meaning of the phrase "terms and conditions" was summarized in 9 Wright and Miller, *Federal Practice and Procedure: Civil*, Sec. 2366 at 178–79.

"In imposing conditions the court is not limited to taxable costs, but may require the plaintiff to compensate for all of the expense to which his adversary has been put. The court may require plaintiff to pay the defendant's attorney's fees as well as other costs and disbursements. It is somewhat anomalous to require payment of an attorney's fee if the plaintiff would not have been liable for the fee had he lost the case on the merits but the cases support this result. However, it is for the court, under the circumstances of the particular case, to decide whether payment of an attorney's fee should be required. It is not obliged to order payment of the fee."

Some courts have taken the view that "upon a motion to dismiss without prejudice the equities of the plaintiff are not a subject for consideration under the rule. The terms and conditions which the court may impose are for the protection of the rights of the defendant." *Home Owners' Loan Corp. v. Huffman*, 134 F.2d 314, 317 (8th Cir. 1943). However, *Lunn v. United Aircraft Corp.*, 26 F.R.D. 12, 18, (D. Del. 1960) asserted that the equities of both sides should be considered, commenting:

"One may agree that the terms and conditions imposed by the Court as a condition for a voluntary dismissal must necessarily be for the benefit of the defendant but it is not so clear the equities of the plaintiff are not to be considered. If the matter of voluntary dismissal is to be determined in the sound discretion of the Court, it would seem that all the facts must be considered and all the equities weighed."

The court in *Lunn* concluded that counsel fees *may* be allowed as a term or condition for voluntary dismissal under rule 41(a)(2). However, while the allowance of counsel fees is permissible on a motion for voluntary dismissal, the omission of counsel fees is not necessarily an arbitrary act. *Lunn, supra* at 19; *New York C. & St. L. R. Co. v. Vardaman,* 181 F.2d 769, 771 (8th Cir. 1950). The amount of attorney fees and expenses to be awarded is within the sound discretion of the court. *Id.* See also *Blackburn v. City of Columbus, Ohio,* 60 F.R.D. 197 (S.D. Ohio, E.D. 1973).[4]

In the case at bar, the defendant developers ask this court to conduct an independent review to determine the amount of reasonable attorney fees payable as a term and condition of plaintiff's dismissal under Rule 805.04(2). The cite *Herro, McAndrews, & Porter v. Gerhardt,* 62 Wis.2d 179, 214 N.W.2d 401 (1974) for the proposition that this court has inherent power to determine the reasonableness of attorneys' fees. In that case, we made clear that this court would exercise its inherent supervisory power over the practice of law and independently review attorneys' fees when challenged on appeal. Thus, *Herro* stated the exception to the usual

[4] *Blackburn* concluded that failure to condition voluntary dismissal upon payment of defendants' attorneys' fees did not constitute abuse of discretion. Defendants would limit this case to civil rights cases in which plaintiffs are likely to be poor. However, the reasoning of *Blackburn* fits well with the general view that courts possess considerable discretion in the setting of terms and conditions under Rule 41(a)(2).

rule that findings of fact will be sustained unless against the great weight and clear preponderance of the evidence.

However, the issue presented by the instant case is not the reasonableness of the attorneys' fees charged. Rather, this case involves the appropriateness of the terms and conditions deemed proper by the trial court in allowing a voluntary dismissal of the case. This case does not call upon this court to exercise its inherent supervisory powers over the practice of law, and thus, the usual standard of appellate review should apply. The real question before the court is whether the trial court abused its discretion in deciding that only some, not all, of the defendants' legal expenses should be shifted to the plaintiffs as the price of taking a voluntary dismissal.

When this court reviews a discretionary order of the trial court, it does not undertake an independent review as it would where there is a claim of legal error. Instead, this court will affirm a discretionary order if there appears to be any reasonable basis for the trial court's decision. *Littmann v. Littmann,* 57 Wis.2d 238, 250, 203 N.W.2d 901 (1972). This court will look for reasons to sustain the trial court when the order rests on legal discretion. *Loomans v. Milwaukee Mutual Ins. Co.,* 38 Wis.2d 656, 662, 158 N.W.2d 318 (1968).

The federal cases cited harmonize with *Russell v. Johnson,* 14 Wis.2d 406, 111 N.W.2d 466 (1961), a Wisconsin case decided under the old rules of civil procedure. In that case, it was held that the trial judge could require the plaintiff to pay reasonable attorney's fees to the defendant as a condition for discontinuing his action. However, this court held that the amounts allowed by the trial court were too high, and reduced the attorney's fees from $500 to $100.

We conclude that the assessment of attorney's fees as a condition of a voluntary dismissal was within the trial court's discretion.

The second question is:

DID THE TRIAL COURT ABUSE ITS DISCRETION IN REQUIRING THE PLAINTIFFS TO PAY ONLY A PORTION OF THE DEFENDANTS' ATTORNEYS' FEES AS A TERM AND CONDITION OF THE DISMISSAL?

Factors considered by trial courts in assessing attorney's fees against plaintiffs as a condition of a voluntary dismissal include: the utility of the work performed to future proceedings, *Russell v. Johnson, supra,* 14 Wis.2d at 414; *Kolman v. Kolman,* 58 F.R.D. 632, 634 (W.D. Pa. 1973); the good faith of the plaintiff, *Blackburn v. City of Columbus, Ohio, supra,* 60 F.R.D. at 198; the stage to which the proceedings had progressed, *Hudson Engineering Co. v. Bingham Pump Co.,* 298 F. Supp. 387, 388 (S.D.N.Y. 1969); complexity of the work performed, *Meltzer v. National Airlines, Inc., supra,* 31 F.R.D. at 51.

In *Nazzaro v. Weiner,* 38 F.R.D. 430 (D.N.J. 1965), affirmed 353 F.2d 537 (3rd Cir. 1965), defendants asked that the plaintiffs pay them $47,105.45, including $31,675 in attorney's fees. The court allowed $5,000 for attorney's fees and made the following comments:

"With respect to the amount which the attorneys for the defendants have charged for the services which they have rendered to the defendants in this case, both plaintiff and the Court are powerless to control the quantum thereof if the fee charged and paid or to be paid had been a matter of agreement between the defendants and their attorneys. The Court does not feel called upon in this proceeding [cf. N.J.S.A. 2A:13–6] to determine the propriety of that amount, or the

rate per hour, per partner or per associate which the parties to the retainer agreement agreed upon. 'At times lawyers differ widely in their appraisals of the value of services, and it is not uncommon for a court to slash requests for allowances.' *In re Quinn*, 25 N.J. 284, 289, 135 A.2d 869, 872, 70 A.L.R.2d 956 (1957). The plaintiff, however, had no control over the amount of time or the degree of effort which counsel for the defendants may have devoted or expended to or in the performance of the services for which they have made their charge." *Id.* at 433.

We conclude that factors to be considered in assessing attorney fees against a plaintiff in a voluntary dismissal include (1) the utility of the work performed for future proceedings should the plaintiff reinstitute the action; (2) the good faith of the plaintiff; (3) the stage to which the proceedings had progressed; (4) the complexity of the work performed; (5) whether it would result in undue hardship on the plaintiff; and (6) any factors which would result in unique prejudice to the defendant.

The trial court in the case before us, considered the fact that the case had proceeded only to the pleadings stage, with much of the time consumed by demurrers to complaints. The trial court said that no legal research related to the merits of the case should be included in the fee set, nor any discovery work since such would be usable in any future litigation. The trial judge stated that he did not believe the legal research necessary for the demurrers was of undue difficulty, stating: "When I got this matter before me I was able within a matter of an hour or so to put my fingers on the cases involving misjoinder. I was able to look at the complaint and determine that the allegations of the second complaint on information and belief were not valid and would not stand up against demurrer."

The trial judge had a reasonable basis in limiting the recovery of legal expenses to those attributable to work on the demurrers, and not to the merits. We conclude there was no abuse of discretion by the trial court in setting $800 as the condition of dismissal.

The third question is:

SHOULD THIS COURT IMPOSE OR DENY COSTS AGAINST THE DEFENDANTS FOR PREPARING AN ALLEGEDLY DEFECTIVE APPENDIX AND FOR INCLUDING MATERIAL IN THEIR BRIEF NOT IN THE RECORD BELOW?

The plaintiff homeowners complain that the defendant developers neglected to print the trial court's decision in its entirety in their appendix. They suggest that the defendants should be penalized by the imposition of costs if they lose or the denial of costs if they win. What was omitted was the very end of the judge's decision giving the plaintiff homeowners the option of amending their complaint instead of taking a voluntary dismissal.

The defendants argue that the omission of the portion of the transcript concerning the plaintiffs' option to plead over is not germane to the issue on appeal, i.e. the meaning of the phrase "terms and conditions" for a voluntary dismissal under sec. 805.04 (2).

Sec. (Rule) 251.38 (2), Stats. 1975 provides:

"251.38. **Rule. (Page limitation on briefs).** . . . (2) Where it satisfactorily appears that the rules relating to the preparation and printing of a brief, including the appendix, have been flagrantly disregarded or there is an absence of a good faith attempt to comply therewith, the court may in its discretion deny to or impose costs against the offending party or strike his brief from the files."

The printing of appendices was governed by sec. (Rule) 251.34 (5), Stats. (1975):

"251.34. **Rule.** **(Appellant's brief and appendix).** . . . (5) In addition to the brief, the appellant or plaintiff in error shall print an appendix or in lieu of it the statement of the case (Rule 251.28). The appendix shall contain, arranged in the following order:

"(a) The opinion or decision of the trial court.

"(b) Such part and only such part of the pleadings, finding, verdict, judgment or order sought to be reviewed as may be material in the consideration on appeal of the questions stated."

The rule on briefs and appendices is a substantial compliance rule. *Henschel v. Rural Mutual Casualty Ins. Co.,* 2 Wis.2d 466, 86 N.W.2d 633 (1967). Lack of substantial compliance was equated with failure to comply with the terms of Rule 251.38 (2) in *Olbert v. Ede,* 38 Wis.2d 240, 245, 156 N.W.2d 422 (1968). There is nothing in this case to indicate that the rules have been flagrantly disregarded or that there was a lack of a good faith attempt to comply with the rules by the defendants. Therefore, this court will impose no penalty on the defendants.

The plaintiffs also complain that the defendants included material in their brief not included in the record. What is at issue is the itemization of the defendants' legal expenses printed at page fifteen of the defendants' brief. Since the defendants are asking this court to conduct an independent review of their fees, it was proper to include an itemization on which request for fees is based.

*By the Court.*—Order affirmed.