Anderson B. CONNOR and Thelma A. Connor, Plain-
tiffs-Respondents,

v.

Sara CONNOR, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 99–0157, 99–1042. Oral argument January 3,
2001.—Decided May 18, 2001.*

2001 WI 49

(Also reported in 627 N.W.2d 182.)

For the defendant-appellant-petitioner there were briefs by *Mark E. Sostarich* and *Petrie & Stocking S.C.*, Milwaukee, and oral argument by *Mark E. Sostarich*.

For the plaintiffs-respondents there was a brief by *Ann E. Stevning-Roe* and *Juneau, Minder, Gross & Stevning-Roe, S.C.*, Marshfield, and oral argument by *Ann E. Stevning-Roe*.

¶ 1. WILLIAM A. BABLITCH, J. Sara Connor (defendant) petitions us to review a decision of the court of appeals that denied her relief from a default judgment entered against her. The circuit court, Judge Robert A. Kennedy presiding, entered the default judgment against her because she failed to serve her answer to a complaint filed by Anderson B. and Thelma A. Connor (plaintiffs) within the statutory deadline and failed to show excusable neglect for her untimely answer. We conclude that the record does not support a

finding of excusable neglect or any basis for relief to reopen the default judgment. Accordingly, we affirm the court of appeals' decision.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2.    This lawsuit originated from a disagreement between the parties over property rights, specifically, a dispute over the use of a road. Both parties in this case owned property on the west side of and adjacent to Birch Lake in Forest County. The plaintiffs' property was located to the north of the defendant's property. The plaintiffs gained access to their property by traveling on a north-south road that ran along the western side of the lake. A section of this road crossed the defendant's property.

¶ 3.    In the fall of 1997, the defendant asked the plaintiffs to use an alternative route. They refused. The defendant then blocked access to the road.

¶ 4.    On June 10, 1998, the plaintiffs filed a three-count complaint against the defendant. All three counts were based on alleged violations of their easement rights to the road. The first cause of action alleged that the defendant had intentionally interfered with the plaintiffs' access to the easement road. The plaintiffs sought damages and permanent injunctive relief to prohibit the defendant from interfering with their use of the road. The remaining causes of action alleged (1) conversion or dispossession of property rights and (2) intentional interference with contractual rights. On that same date, the plaintiffs also filed a separate motion for temporary injunctive relief.

¶ 5.    On June 15, 1998, the defendant received the summons, complaint and notice of motion for temporary injunction. The summons stated that the defendant was required to respond with a written

answer within 45 days. The defendant retained Steven Polich as her attorney. Polich represented the defendant at a July 16, 1998, hearing on the plaintiffs' motion for temporary injunction. The circuit court granted the plaintiffs' motion on that date.

¶ 6. The statutory deadline for the defendant to serve her answer was July 30, 1998. The defendant, however, failed to meet this deadline. Instead, she mailed her answer to the plaintiffs on August 4, 1998, and filed the answer with the court on August 10, 1998. The defendant substituted attorney Mark Sostarich for Polich as her counsel and filed a substitution of counsel with the court on September 10, 1998.

¶ 7. In response to the defendant's answer, the plaintiffs filed a motion to strike the answer and a motion for default judgment. The plaintiffs asserted that they did not receive the defendant's answer until August 10, 1998, and that no extension of time to answer was ever requested by or granted to the defendant.

¶ 8. On November 12, 1998, the defendant filed a motion requesting the court to accept her answer. The defendant argued that the court should regard her answer as timely served because Polich had received an extension of time to serve the answer from Patrick Juneau, an attorney who worked at the same firm as the plaintiffs' counsel. An affidavit from Polich attested to this fact and was filed with the defendant's motion. In the alternative, the defendant argued that the court should accept the answer because any misunderstanding by Polich about the existence of such an agreement amounted to excusable neglect, requiring an enlarge-

ment of time to answer under Wis. Stat. § 801.15(2)(a)(1997–98).[1]

¶ 9. The court held a hearing on the parties' motions on November 16, 1998. The court concluded that Polich's affidavit only stated that he understood that there was a courtesy extension agreement between the parties; it did not state that he ever asked for or received an extension. This lack of a clear agreement was a factor in the court's conclusion that there was insufficient evidence to support a finding of excusable neglect. The court also based its decision on the amount of time that Polich had to answer the complaint and Polich's active involvement in the case prior to the deadline. The court then denied the defendant's motion and granted the plaintiffs' motions. An order was issued on November 30, 1998. On that same date, the court entered judgment only on the first cause of action. The judgment granted permanent injunctive relief to the easement rights of the road and costs associated with this relief to the plaintiffs.

¶ 10. The defendant then filed both a motion for reconsideration and a motion to reopen and vacate the judgment pursuant to Wis. Stat. § 806.07(1)(a), (b), (g) or (h). In her motion, she alleged in part that the judgment should be vacated in light of a second affidavit from Polich. In the affidavit, Polich again alleged that the parties had in fact entered into a oral courtesy extension agreement and further stated that the basis for this agreement was so that Polich could conduct depositions of the plaintiffs before filing the answer.

¶ 11. In response, the plaintiffs submitted an affidavit from their attorney, Ann Stevning-Roe. Stevning-Roe admitted that Polich had contacted her

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

about setting up depositions and that she agreed to make her clients available for deposition, but stated that nothing further had developed on this matter. She denied the existence of any agreement, stating that "[a]bsolutely nothing was requested, discussed, stated or granted regarding an extension to file Answers based upon the scheduling of depositions" and that "[a]t no time did Mr. Polich say anything regarding wanting to schedule depositions prior to filing an Answer in this matter."

¶ 12. During a March 29, 1999, hearing, the court denied both of the defendant's motions. In its decision, the court dismissed Polich's second affidavit as unbelievable and "self-serving." The court further stated that Polich should have sent out confirmation of the agreement and that he should have been aware that the answer was due because he was actively involved in the case prior to the deadline. An order to that effect was issued on April 7, 1999.

¶ 13. The court of appeals affirmed, and we accepted review. Two issues are presented: (1) whether the circuit court properly exercised its discretion in granting the plaintiffs' motion to strike the answer and motion for default judgment; and (2) whether the court properly exercised its discretion in denying the defendant's motion for reconsideration and her motion to vacate the default judgment.

## II.  ISSUE ONE: MOTION TO STRIKE AND DEFAULT JUDGMENT

¶ 14. We examine two orders issued by the circuit court. The first order, entered on November 30, 1998, addressed four separate motions. Two of these motions—a motion to strike the defendant's entire

answer and a motion for default judgment—were both properly brought by the plaintiffs in response to the defendant's untimely answer. *See Martin v. Griffin*, 117 Wis. 2d 438, 441–42, 344 N.W.2d 206 (Ct. App. 1984). The other two motions—a motion to accept the answer and a motion to enlarge the time for serving an answer—were then filed by the defendant. The defendant's motions are appropriately considered as one motion because they both essentially seek relief under Wis. Stat. § 801.15(2)(a) on the basis of excusable neglect. *See Clark County v. B.T.U. Structures, Inc.*, 144 Wis. 2d 11, 15–16, 422 N.W.2d 910 (Ct. App. 1988) (evidence of a courtesy extension agreement is excusable neglect).

■

¶ 15.   The circuit court noted that it only needed to address the plaintiffs' motions in this case. The court did not err in this respect. It could proceed in this manner because, under either party's motions, the court was required to determine whether excusable neglect was present. *See Leonard v. Cattahach*, 214 Wis. 2d 236, 248–49, 571 N.W.2d 444 (Ct. App. 1997); *Rutan v. Miller*, 213 Wis. 2d 94, 101, 570 N.W.2d 54 (Ct. App. 1997); *Martin*, 117 Wis. 2d at 442. The court correctly applied the excusable neglect standard in this case.

■

¶ 16.   Excusable neglect is not the same as neglect, carelessness or inattentiveness. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982). Instead, it is " 'that neglect which might have been the act of a reasonably prudent person under the same circumstances.' " *Id.* (quoting *Giese v. Giese*, 43 Wis. 2d 456, 461, 168 N.W.2d 832 (1969)). In the context of an untimely answer, reasonable grounds for noncompli-

ance with the statutory period constitutes excusable neglect. *Id.*

¶ 17. A circuit court has great discretion in granting relief based on excusable neglect. *Id.* at 467. In exercising this discretion, the court must consider whether the interests of justice would be served in its finding. *Id.* at 468. The interests of justice require the court to be aware that a failure to find excusable neglect could result in a default judgment and that the law generally disfavors default judgments and prefers a trial on the merits. *Id.* at 469. The court should also balance other competing interests of a default judgment, such as promoting prompt adjudication and encouraging quality legal representation. *Id.*

¶ 18. We will not disturb a circuit court's decision regarding excusable neglect unless an erroneous exercise of discretion is clearly shown. *Id.* at 471. An erroneous exercise of discretion will result "[i]f the record indicates that the circuit court failed to exercise its discretion, if the facts of record fail to support the circuit court's decision, or if this court's review of the record indicates that the circuit court applied the wrong legal standard. . . ." *Id.* at 471–72. If the circuit court enumerates its reasons for finding excusable neglect, we "will focus on the facts of record to determine whether they support the court's reasons." *Id.* at 471.

¶ 19. Upon review, we conclude that the circuit court properly exercised its discretion in finding that excusable neglect was not present and in granting default judgment. The reasons articulated by the court provide a reasonable basis for this determination and are supported by the record.

¶ 20. One reason articulated by the court was that Polich's affidavit did not provide clear evidence of an oral courtesy extension agreement. The affidavit only stated that Polich understood that there was an agreement based on prior communications with Juneau and their "mutual cooperation."[2] This assertion, the court determined, was insufficient to support a finding of a clear agreement. At that time, the record also contained an affidavit from Juneau, which denied the existence of the agreement[3] and alleged that, on a prior occasion when an adjournment was necessary, the parties entered into a written agreement. This evi-

---

[2] Polich's affidavit stated in relevant part as follows:

2. In May, 1998, Attorney Patrick J. Juneau of the law firm of Juneau, Minder, Gross & Stevning-Roe, S.C. wrote to me an [sic] informed me that he would be representing Andy and Thelma Connor with regard to their claims of purported blocked access to a road which they contended they had easement rights to. I had numerous conversations and communications with Mr. Juneau and established a highly cooperative working relationship with him.

3. I worked with Mr. Juneau in an effort to amicably resolve the matter, and when it could not be so resolved, worked with him regarding the scheduling of an injunction hearing and the manner in which this case would be brought before the Court's attention. Based upon our communications and our mutual cooperation, it was my understanding that I had been granted a reasonable time to answer after the hearing regarding the Injunction on July 16, 1998 and that, in fact, I answered just four days beyond the statutory time.

[3] Juneau's affidavit stated in relevant part:

6. Subsequent to turning the file over to Attorney Stevning-Roe for litigation, your affiant had no discussions with Mr. Polich regarding response times for answer in this proceeding. Your affiant never made any reference or had any discussion with Mr. Polich regarding the time to answer so there is absolutely no basis for him to construe that there was an extension of a time to answer granted by your affiant since there was absolutely no discussion that took place regarding the same.

dence supports the conclusion that no agreement for an extension of time to answer existed. Thus, the court correctly concluded that the alleged agreement could not constitute a basis for excusable neglect.

■■

¶ 21. The defendant argues that this finding by the court essentially concluded that the courtesy extension agreement was unenforceable because it was not in writing or confirmed in writing. This is an incorrect interpretation of the circuit court's decision. The court only concluded that the affidavit did not reflect a clear agreement between the parties; it did not conclude that the agreement was unenforceable because it was not in writing. In fact, the only mention the court made about the agreement not being in writing was that most attorneys confirm such extensions in writing. It did not state that the agreement had to be in writing. Indeed, courtesy agreements that are not reduced to writing may be enforceable in certain instances. *See Rutan*, 213 Wis. 2d at 102. Here, however, the parties disputed the existence of the agreement; therefore, the court was forced to make a determination as to whether the agreement even existed. Certainly, this case reemphasizes our previous warning that, as a matter of good practice, such agreements should be reduced to writing with additional notification to the court. *See Oostburg State Bank v. United Savings & Loan Ass'n*, 130 Wis. 2d 4, 13, 386 N.W.2d 53 (1986).

¶ 22. Also, with respect to the courtesy extension agreement, the defendant argues that the court erred by failing to acknowledge that Polich's misunderstanding of the agreement may have constituted excusable neglect. However, at the time of this hearing, there was no evidence—no notes, confirmation letters, or other documentation from Polich—to indicate that he misun-

derstood that there was an agreement. Further, the record did not contain any testimony from Polich to indicate that he ever asked for an extension or that Juneau ever misled him into thinking that an extension was granted. Indeed, the defendant could have provided additional evidence to the court on this and other factors; however, she decided to rest her case on Polich's affidavit without seeking a continuance for an evidentiary hearing where Polich could have appeared and given testimony. Polich was not present because of a scheduling conflict. Thus, in light of the lack of evidence ·showing any misunderstanding, the court did not err in failing to find excusable neglect based on this alleged misunderstanding.

¶ 23.  Another reason articulated by the court was that the defendant had reasonable time to serve the answer. In particular, the court noted that the defendant had 14 days in which to file from the time of the temporary injunction hearing to the statutory deadline and concluded that this amount of time was sufficient to file an answer. The defendant argues that this factor was outside the scope of the court's analysis for excusable neglect. She asserts that the court's focus should have been on whether there was a justifiable explanation for the untimely answer, not on whether there was adequate time to serve the answer.

¶ 24.  However, in this case, the defendant made this time frame an issue when it entered Polich's affidavit into evidence, which alleged: "[I]t was my understanding that I had been granted a reasonable time to answer after the hearing regarding the Injunction on July 16, 1998 and that, in fact, I answered just four days beyond the statutory time." In an apparent response to this statement, the court concluded that

the time between the hearing and the statutory deadline was a reasonable time to answer, implying that the defendant did not need extra time in which to answer. The time to answer was reasonable, the court concluded, in light of the fact that Polich did not provide any reason as to why he could not answer by the deadline. Thus, because the defendant made this time period an issue, the court acted properly in considering it and using it as a basis for rejecting the defendant's excusable neglect argument.

¶ 25.   Based on the above, we conclude that the record supports the circuit court finding that the defendant failed to show excusable neglect and that it appropriately entered the default judgment. The defendant contends that the court erred because it failed to consider policy reasons weighing against default judgment in its determination. The court, however, was aware of these factors at the hearing. In particular, the defendant informed the court that it had broad discretion in granting motions to enlarge the time to answer and that the law generally treats default judgment as an extreme measure. The fact that the court did not specifically articulate its consideration of these policy factors does not mean that it was not cognizant of these factors before granting the plaintiffs' motions. The court acted properly.

### III.   ISSUE TWO: RECONSIDERATION AND VACATING JUDGMENT

¶ 26.   We next review the court's order that denied the defendant's motion for reconsideration and denied her motion to vacate the judgment pursuant to Wis. Stat. § 806.07(1). In her motion for reconsideration, the defendant argued that the court erred by

considering the time between the temporary injunction hearing and the statutory deadline as a factor for excusable neglect. However, as we concluded above, the court did not err in this respect, and we will not revisit this issue. Our analysis is limited to the motion to vacate the judgment.

■■■■■■■

¶ 27.   A circuit court's decision to grant or deny a motion under Wis. Stat. § 806.07(1) is reviewed subject to an erroneous exercise of discretion standard. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541–42, 363 N.W.2d 419 (1985). In its exercise of discretion, the court "must attempt to strike the appropriate balance between the countervailing policy considerations that consistently pull at either end of the default judgment spectrum." *J.L. Phillips & Assocs. v. E & H Plastic Corp.*, 217 Wis. 2d 348, 359, 577 N.W.2d 13 (1998). These considerations were mentioned above. In short, we balance the competing values of finality and fairness in the resolution of a dispute. *State ex rel. M.L.B.*, 122 Wis. 2d at 542.

■■■■■■■

¶ 28.   The defendant sought relief under Wis. Stat. § 806.07(1)(a), (b), (g) and (h). This statute provides:

> On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
>     (a)   Mistake, inadvertence, surprise, or excusable neglect;
>     (b)   Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);
>     . . . .

    (g)   It is no longer equitable that the judgment should have prospective application; or
    (h)   Any other reasons justifying relief from the operation of the judgment.

Wis. Stat. § 806.07(1)(a), (b), (g) & (h). This statute is construed liberally because of its remedial nature. *J.L. Phillips*, 217 Wis. 2d at 359. The defendant bears the burden to prove that the requisite conditions existed. *Hansher v. Kaishian*, 79 Wis. 2d 374, 389, 255 N.W.2d 564 (1977).

¶ 29.   In her motion, the defendant argued that relief was warranted based on the following: (1) Polich's misunderstanding of the courtesy extension agreement constituted excusable neglect; (2) the information provided by Polich in his second affidavit constituted newly discovered evidence; and (3) application of the judgment was not equitable. The defendant did not specifically enumerate any basis for relief under subsection (h) in her motion.

¶ 30.   We first review whether the circuit court properly exercised its discretion by denying relief under subsection (a). We conclude that it did. The defendant presented Polich's second affidavit as a basis for relief under this subsection. In it, Polich alleged that he delayed filing the answer because he wanted to first conduct depositions of the plaintiffs before filing the answer. Polich asserted that he and the plaintiffs' attorney reached an agreement that an answer would not have to be filed until the depositions were taken. As stated above, the plaintiffs' attorney specifically denied that any such agreement was reached between the parties.

¶ 31.   During the hearing on the motion, the court dismissed Polich's affidavit as "self-serving." It stated

that it did not believe Polich's assertion that the parties had reached an agreement to allow the defendant to file her answer after the depositions. We regard this conclusion as a dismissal of Polich's sworn statements based on the court's finding that Polich lacked credibility. We uphold this ruling by the circuit court because it is the ultimate arbiter of the credibility of a witness. *Homa v. East Towne Ford, Inc.*, 125 Wis. 2d 73, 80 n. 7, 370 N.W.2d 592 (Ct. App. 1985). After the court rejected this explanation by Polich, the court was basically presented with the same facts and explanations presented by the defendant at the first hearing. As a result, the court could properly exercise its discretion and deny relief under subsection (a) because the record would again support a finding by the court that excusable neglect was not present.

¶ 32.  The defendant argues that the court erred in several respects in reaching this determination. First, she contends that the court again erred by basing its decision on the fact that oral courtesy extension agreements are unenforceable unless they are in writing or confirmed in writing. Again, the court did not make any such finding. Instead, the court only noted that there was a lack of any documentation in the record and that, in practice, there would have normally been confirmation letters sent. The court certainly may consider the lack of documentation in making a determination as to whether an agreement existed. Such consideration must not be construed as a requirement that courtesy extension agreements must be in writing.

¶ 33.  Second, the defendant contends that the court failed to reconcile the conflicting affidavits in this case to determine whether an oral courtesy extension agreement existed or whether the affidavits showed

substantial confusion between the parties as to the existence of an agreement to support a finding of excusable neglect. However, the court resolved the various conflicts in the affidavits by dismissing the affidavits of Polich and relying on affidavits submitted by the plaintiffs. This decision was a proper determination of credibility. In light of the remaining testimony, the court did not erroneously exercise its discretion by concluding that an extension agreement had not been reached or that any other basis for excusable neglect was present.

¶ 34. Third, the defendant argues that the court failed to consider and articulate interests of justice factors in denying the motion to vacate the judgment. In particular, the defendant asserts that the court should have considered such factors as the drastic consequences of the default judgment in this case, the meritorious defenses presented in the answer, and the lack of any prejudice to the plaintiffs from the late answer. Again, however, the court was made aware of these factors during the hearing and made its decision in light of these relevant interests.

¶ 35. Fourth and finally, the defendant contends that the court erred by imputing the negligence of Polich to her in this case. She argues that Polich's negligence took on many forms, including that he was ineffective at the temporary injunction hearing, that he failed to secure a written courtesy extension agreement, and that he failed to provide her with affidavits to prepare for hearings in a prompt manner. According to the defendant, Polich's conduct was so egregious in this case that the judgment must be vacated.

¶ 36. "A court is not bound to impute to a client everything his lawyer does or omits to do." *Charolais Breeding Ranches, Ltd. v. Wiegel*, 92 Wis. 2d 498, 514,

285 N.W.2d 720 (1979). However, "[m]istakes, ill advice, or other failures of a lawyer may constitute excusable neglect on the part of the client, when the client has acted as a reasonable and prudent person in engaging a lawyer of good reputation, has relied upon him to protect his rights, and has made reasonable inquiry concerning the proceedings." *Id.* "In deciding whether to impute the negligence of the lawyer to the client, the trial court must exercise its 'equitable powers to secure substantial justice between the parties.'" *Id.* (quoting *Paschong v. Hollenbeck*, 13 Wis. 2d 415, 424, 108 N.W.2d 668 (1961)).

¶ 37. The defendant asserts that she took all reasonable steps to protect her position, including forwarding the complaint immediately to her attorney, attending the temporary injunction hearing, and substituting counsel when she believed that Polich was ineffective. On this issue, however, we agree with the conclusion reached by the court of appeals. As the court noted, although the defendant decided to substitute Sostarich for Polich as counsel, the record does not reflect that she made any reasonable inquiry into the status of the case before firing Polich to secure her position in the litigation. As a result, without any such inquiry, we conclude that it is reasonable to impute any alleged negligence on the part of Polich in failing to file the answer to the defendant.[4]

---

[4] The defendant filed a motion after oral argument requesting that this court allow supplemental briefing and take judicial notice that Polich was not a licensed attorney in Wisconsin at the time that he represented the defendant. However, during the hearing on the motion to vacate the judgment, the defendant specifically represented to the court that Polich was in fact a licensed attorney in Wisconsin. The defendant does not pro-

¶ 38. Finally, we examine the court's determination with respect to subsections (b), (g) and (h). On these subsections, the circuit court failed to set forth any specific reasons for its denial for relief. Regardless, we may conduct our own examination of the record to determine whether the circuit court properly exercised its discretion and whether the facts provide support for the court's decision. *Hedtcke*, 109 Wis. 2d at 471; *Homa*, 125 Wis. 2d at 79. We note that remand to the circuit court for an evidentiary hearing may be warranted in some cases where the defendant's claim sets forth a basis for relief and a hearing is necessary to determine the truth of the allegations. *See State ex rel. M.L.B.*, 122 Wis. 2d at 553–54. However, in this case, we make our determination based solely on the record in light of the fact that the defendant effectively waived any right to an evidentiary hearing during the motion hearing. The waiver occurred when the defendant rejected the court's repeated inquiries as to whether an adjournment for an evidentiary hearing was necessary.

¶ 39. On review, we first conclude that the record does not support a finding that Polich's second affidavit constituted "newly discovered evidence" under subsection (b). The defendant failed to present any evidence to establish the elements of "newly discovered evidence," particularly that the information "did not arise from lack of diligence in seeking to discover it." *See* Wis. Stat. § 805.15(3)(b). As the plaintiffs argued, the affidavit contained information that the defendant could have likely discovered before the first hearing. Thus, in

---

vide any compelling reason to this court for her failure to discover this information before the hearing in the circuit court. Accordingly, we deny the defendant's motion.

light of this failure to prove these elements, it was not an erroneous exercise of discretion for the court to deny relief under this subsection.

¶ 40.   We also conclude that subsection (g) does not apply in this case. This subsection specifically requires a person seeking relief from the judgment to show that the prospective application of the judgment "is *no longer* equitable." Thus, under the clear language of this statute, a change in circumstances is specifically contemplated which makes the judgment no longer equitable. *See State ex. rel M.L.B.*, 122 Wis. 2d at 543–44. The defendant did not allege any such change in circumstances, and as a result, the court did not err by failing to grant relief under this subsection as well.

¶ 41.   Finally, we conclude that the court properly denied relief to the defendant under subsection (h). Under this subsection, relief is warranted only when "extraordinary circumstances" are present. *Id.* at 552. A circuit court considers the following factors in determining whether extraordinary circumstances exist:

> whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*Id.* at 552–53.

¶ 42.   The defendant never clearly articulated its reason for seeking relief under this subsection. How-

ever, during the hearing on the motion to vacate the judgment, the defendant argued that she should be entitled to relief from the judgment because the entry of judgment in this case inequitably and permanently impaired her property. She contended that any remedy available—such as an ineffective assistance of counsel claim against Polich—would not alleviate the impairment of her property. It would only lead to compensation for the property. We construe this argument as one seeking relief based on extraordinary circumstances, but conclude that in this case this argument does not provide a basis for relief.

■■■

¶ 43.   Certainly, the effects of the entry of default judgment should be considered by the court; however, simply because the entry of judgment impairs or affects property does not warrant a finding of extraordinary circumstances. Extraordinary circumstances may exist only in extreme and limited cases. This case does not present such extraordinary circumstances.

## IV.   CONCLUSION

¶ 44.   In sum, the circuit court did not abuse its discretion in granting default judgment or in denying the motion to vacate the judgment. The defendant failed to present sufficient evidence of excusable neglect or of any basis for relief under Wis. Stat. § 806.07(1). As a result, we affirm the court of appeals' decision upholding the orders and judgment issued by the circuit court. In addition, because the record does not indicate that the circuit court ever made a determination as to the amount of costs to be awarded to the plaintiffs, we remand to the circuit court for a determination on this issue.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court.