WILLIAMS CORNER INVESTORS, LLC, Plaintiff-Respondent,

v.

AREAWIDE CELLULAR, LLC, Defendant,

ALPHA COMMUNICATIONS, INC., Defendant-Appellant.†

Court of Appeals

*No. 03–0824. Submitted on briefs November 6, 2003.—Decided January 14, 2004.*

2004 WI App 27

(Also reported in 676 N.W.2d 168.)

† Petition to review dismissed 3-3-04.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John K. Hughes* of *Gessler, Hughes, Socol, Piers, Resnick & Dym*, Chicago, IL.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas Van Beckum* of *Thomas Van Beckum Law Offices, S.C.*, Kenosha.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. ANDERSON, P.J. Alpha Communications, Inc., (Alpha) appeals a default judgment awarding damages and costs to Williams Corner Investors, LLC, (Williams). Williams' motion for a default judgment was granted after Alpha failed to timely answer Williams' complaint which averred that Alpha had breached a sublease and/or lease assignment and had engaged in misrepresentation regarding this matter. Alpha argues that default judgment was not warranted because it established a reasonable basis for the delay, i.e., "excusable neglect," in filing its answer and because the circuit court failed to consider the interests of justice. We reject Alpha's arguments and affirm.

¶ 2. *Facts.* In August 2001, Areawide Cellular, LLC, entered into a written lease with Williams for retail space in Kenosha, Wisconsin. Williams claimed that Areawide Cellular assigned or sublet the lease to Alpha and orally represented to Williams that Alpha was the sub-lessee or assignee.[1] The first rent payment for the lease with Williams was due in January 2002—

---

[1] This appeal does not concern the allegations against Areawide Cellular or challenge the default judgment entered against Areawide Cellular on February 7, 2003.

payment was not made. On February 13, 2002, Alpha informed Williams that it was not interested in the space and confirmed this in writing on February 14, 2002.

¶ 3.  On October 8, 2002, Williams filed a complaint against Areawide Cellular and Alpha. With respect to Alpha, Williams' complaint alleged breach of sublease or assignment, equitable estoppel and misrepresentation. The defendant informed the court that the summons and complaint were not endorsed by the process server and did not indicate the time and date of service. *See* WIS. STAT. § 801.10(2) (2001–02).[2] However, the process server's affidavit of service stated that on October 15, 2002, he served the summons, complaint and request for production of documents upon Alpha "by handing copies to Male/White, 5'10", 230 Lbs., Age approximately 55, who identified himself as William A. DeGeronimo, Registered Agent of Alpha Communications, Inc. at their place of Business at 1321 Tower Road, Schaumburg, Illinois, Cook County, Illinois." In addition, DeGeronimo's own affidavit stated: "This summons and complaint in this case were served at the Alpha Communications office in mid-October, 2002."

---

[2] WISCONSIN STAT. § 801.10(2) provides:

ENDORSEMENT. At the time of service, the person who serves a copy of the summons shall sign the summons and shall indicate thereon the time and date, place and manner of service and upon whom service was made. If the server is a sheriff or deputy sheriff, the server's official title shall be stated. Failure to make the endorsement shall not invalidate a service but the server shall not collect fees for the service.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 4. Calculating from the October 15, 2002 date of service, the deadline for timely receipt of Alpha's answer would have been November 29, 2002. WIS. STAT. § 802.06(1).[3] Alpha filed its answer on December 4, 2002. On January 7, 2003, Williams filed a motion for default judgment based on Alpha's failure to answer or otherwise file responsive pleadings in a timely manner.

¶ 5. Alpha argued that there was "excusable neglect" for its failure to timely answer. In order to support this argument, Alpha provided an affidavit from DeGeronimo. The pertinent part of the affidavit stated:

> This summons and complaint in this case were served at the Alpha Communications office in mid-October, 2002. Ms. Ronda Finch, the affiant's Executive Assistance who handles matters such as this was away from the office for a few days due to a death in her family. The complaint was received during her absence. The summons and complaint were not date-stamped when they were received and later no one was able to recall the specific date when they were received.

¶ 6. In addition to the affidavit, Alpha informed the court that DeGeronimo "disputes he was served." Alpha's attorney explained:

> [T]his operation is . . . a retail store with counters. I don't know if this is reflected in [DeGeronimo's] affidavit, but what [DeGeronimo] believes happened is that service was put on the counter. When it's—if someone finds such a thing on the counter, they will put it on a desk of his executive assistant, who was out; and

---

[3] WISCONSIN STAT. § 802.06(1) provides in pertinent part: "[A] defendant shall serve an answer within 45 days after the service of the complaint upon the defendant."

eventually when she returned, it was brought to his attention. So, he never knew what the date of service was.

¶ 7.   After examining the record and hearing the evidence, the trial court found no excusable neglect. The court made several findings of fact. First, the court found that on October 15, 2002, DeGeronimo was served. Second, the court found that Alpha defaulted in answering Williams' complaint. Finally, the court determined that "the allegations, statements and averments set forth in plaintiff's complaint" were "true and correct."

¶ 8.   Alpha appeals, arguing that default judgment was not warranted because it established excusable neglect having shown a reasonable basis for the delay in filing its answer and because the circuit court failed to consider the interests of justice. Finally, in its claim of erroneous exercise of discretion, Alpha asks us to consider that it responded promptly in filing its answer.

¶ 9.   *Law.* We must accept a trial court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *see also Shawn B.N. v. State,* 173 Wis. 2d 343, 358–59, 497 N.W.2d 141 (Ct. App. 1992). From our review of the record, we conclude that the trial court's findings of fact are not clearly erroneous.

¶ 10.   A defendant shall serve an answer within forty-five days after the service of the complaint upon the defendant. WIS. STAT. § 802.06(1). In response to an untimely answer, a plaintiff may properly bring a motion to strike the defendant's entire answer and a motion for default judgment. *Connor v. Connor,* 2001 WI 49, ¶ 14, 243 Wis. 2d 279, 627 N.W.2d 182. The circuit court's decision on whether to grant a default

688

judgment is reviewed under an erroneous exercise of discretion standard. *Id.,* ¶ 18; *see also Hedtcke v. Sentry Ins. Co.,* 109 Wis. 2d 461, 470, 326 N.W.2d 727 (1982). A court properly exercises its discretion if it examines the relevant facts, applies a proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson,* 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). We will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372 (Ct. App. 1987).

¶ 11. A "party moving to vacate a default judgment pursuant to [WIS. STAT.] § 806.07(1)(a) must: (1) demonstrate that the judgment against him or her was obtained as a result of mistake, inadvertence, surprise or excusable neglect; and (2) demonstrate that he or she has a meritorious defense to the action." *J.L. Phillips & Assocs., Inc. v. E & H Plastic Corp.,* 217 Wis. 2d 348, 358, 577 N.W.2d 13 (1998).

¶ 12. In determining whether to grant the dilatory party relief, the first step is to determine if there are reasonable grounds for the noncompliance with the statutory time period (excusable neglect). *Hedtcke,* 109 Wis. 2d at 468. Excusable neglect is that "neglect which might have been the act of a reasonably prudent person under the same circumstances." *Id.* (citation omitted). It is not synonymous with neglect, carelessness or inattentiveness, *id.,* and it is not sufficient that the failure to answer in a timely manner be unintentional and in that sense a mistake or inadvertence, "since

689

nearly any pattern of conduct resulting in default could alternatively be cast as due to mistake or inadvertence or neglect." *Martin v. Griffin*, 117 Wis. 2d 438, 443, 344 N.W.2d 206 (Ct. App. 1984) (citation omitted). Applying this standard, the Wisconsin Supreme Court has upheld a trial court determination that a party's failure to timely answer did not constitute excusable neglect when it was due to the failure of the client to forward the service on to the person or persons responsible for answering, *id.* at 443–44, and where a lawyer claimed that he was preoccupied by other legal business without stating specific incidents and a persuasive explanation, *Hedtcke*, 109 Wis. 2d at 473.

¶ 13.  *Discussion.* With this precedent in mind, the record demonstrates that the circuit court properly exercised its discretion in finding that excusable neglect had not been established. On appeal, Alpha's argument for excusable neglect essentially rests on two assertions:

(1)     [The process server] did not endorse the summons and complaint as required under Wisconsin Code of Civil Procedure and Alpha did not note the date that it was served because the employee who handles service was out of the office due to a death in the family. And,

(2)     [The trial court] did not apply the appropriate legal standard in [its] determination. [It] based [its] decision to grant Williams Corner's motion solely on examination of whether excusable neglect had been established. [It] did not consider the interests of justice i.e. the harsh consequences of default judgment, the fact that default judgments are disfavored and that cases should be decided on the merits.

¶ 14. We address each of Alpha's arguments in order. With regard to Alpha's first argument that the court should have found excusable neglect due to the process server's failure to endorse and date the summons and complaint as required under WIS. STAT. § 801.10(2), we are not persuaded.

¶ 15. DeGeronimo conceded in his affidavit that service occurred in mid-October 2002; the process server stated in his affidavit that he served DeGeronimo on October 15, 2002, and the trial court found that Alpha was served on October 15, 2002. On appeal, Alpha makes no more than the bare assertion that excusable neglect existed because the summons and complaint were not endorsed or dated and the person "charged with handling such matters was out of the office due to a death in her family" at the time of service; therefore, "none of the officers or employees of Alpha Communications were able to recall when the complaint was actually served." In addition to conceding service in mid-October, DeGeronimo's affidavit stated that his assistant was only out of the office a "few days." This is the only explanation given to defend Alpha's untimely answer.

¶ 16. Alpha provides no further explanation to justify the total inactivity between mid-October and December 4—the date of Alpha's untimely answer. Alpha provides no reason as to why within the forty-five day response period from October 15 to November 29, Alpha neither moved for additional time to plead nor filed the answer or any other responsive pleading. Additionally, Alpha does not tell us why no one was assigned to fill in for the absent assistant normally charged with receiving legal process. From the record, it appears that Alpha's failure to answer in a timely

manner amounted to nothing more than carelessness and inattentiveness on the part of the parties involved, and thus does not constitute excusable neglect.

¶ 17. Additionally, we are not swayed by Alpha's argument that it should have been granted leniency because it had promptly remedied its tardiness by filing an answer only five days late. Again, *Hedtcke* provides guidance. In *Hedtcke*, the defendant also argued for leniency because it had promptly remedied the problem by filing an answer only twelve days late. *Hedtcke*, 109 Wis. 2d at 465–66. The supreme court rejected this argument. *Id.* at 478. It held that while prompt remedial action after the expiration of the statutory time limit is a material factor bearing on whether relief should be granted, prompt action does not eliminate the requirement that a dilatory party demonstrate excusable neglect for its initial failure to meet the statutory deadline. *Id.* at 475–76.

¶ 18. Alpha's second argument is that the trial court did not apply the appropriate legal standard in its determination because it based its decision to grant Williams' motion solely on examination of whether excusable neglect had been established and did not consider the interests of justice. We do not agree.

¶ 19. The principal case on excusable neglect is *Hedtcke*, and it teaches that: "If the motion is made after the expiration of the specified time, an order enlarging the time for performing an act must be based on a finding of excusable neglect; *when the circuit court determines that there is no excusable neglect,* the motion *must* be denied." *Id.* at 468 (emphasis added.) As we understand *Hedtcke*, only if the court finds excusable neglect must it also consider the interests of justice

before granting or denying relief.[4] Because the court here found no excusable neglect, it did not consider interests of justice.

---

[4] That said, we believe that there seems to be a need for clarification of the law under *Hedtcke v. Sentry Insurance Co.*, 109 Wis. 2d 461, 326 N.W.2d 727 (1982). As the *Hedtcke* quote we rely on for our holding indicates, *Hedtcke* appears to hold that a trial court must first consider whether or not there is excusable neglect and, if there is no excusable neglect, the motion to enlarge time to file an answer must be denied. *Id.* at 468.

However, in a seeming inconsistency, *Hedtcke* appears to say that the trial court must also consider the interests of justice:

> But the circuit court must go further than considering the causes for the neglect. The interests of justice require the circuit court to be aware of the effects of an order denying or granting relief. The circuit court must be cognizant that denial of a motion for enlargement of time to answer may result in a default judgment in favor of the plaintiff. The law views default judgments with disfavor and "prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." On the other hand, the circuit court should also be aware of the party's and society's interest in prompt adjudication and "the probability that a policy which excused or tolerated a lawyer's neglect would foster delay in litigation" and lower the quality of legal representation. The circuit court, considering these policies, must scrutinize the particular facts in the case before it and determine whether the interest[s] of justice will best be served by granting or denying a motion to enlarge the time.

*Id.* at 469 (citations and footnotes omitted).

Finally, a more recent case, *Connor v. Connor*, 2001 WI 49, ¶ 17, 243 Wis. 2d 279, 627 N.W.2d 182, also seems to say that the trial court must consider the interests of justice:

¶ 20. The trial court's decision to grant Williams' motion for a default judgment against Alpha due to Alpha's untimely answer was not clearly erroneous under the facts and circumstances of this case.

*By the Court.*—Judgment affirmed.

A circuit court has great discretion in granting relief based on excusable neglect. *In exercising this discretion, the court must consider whether the interests of justice would be served in its finding.* The interests of justice require the court to be aware that a failure to find excusable neglect could result in a default judgment and that the law generally disfavors default judgments and prefers a trial on the merits. The court should also balance other competing interests of a default judgment, such as promoting prompt adjudication and encouraging quality legal representation.

There does not seem to be a consensus among our court of appeals decisions regarding whether excusable neglect is a threshold determination or whether the trial court must consider both excusable neglect and the interests of justice.

Given the lack of consensus, we urge the supreme court to guide our future review of trial court decisions employing the exercise of discretion on the question of whether or not to find excusable neglect.