**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 23, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP909**

STATE OF WISCONSIN

Cir. Ct. No. 2020TP113

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.T. II, A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

D.T.,

      RESPONDENT-APPELLANT.

        APPEAL from an order of the circuit court for Milwaukee County: MASHALL B. MURRAY, Judge. *Affirmed*.

¶1    DONALD, J.[1]  D.T. appeals an order terminating his parental rights to his son, D.T. II (hereinafter "Dylan").[2]  On appeal, D.T. argues that:  (1) the circuit court erroneously exercised its discretion when it denied his motion to reopen a default judgment; (2) insufficient evidence existed to find that D.T. was an unfit parent; and (3) the circuit court erroneously exercised its discretion when it found that the termination of D.T.'s parental rights was in Dylan's best interests.  We disagree, and therefore, affirm.

## BACKGROUND

¶2    Dylan was born on May 15, 2018.  At the time of his birth, Dylan tested positive for marijuana and was admitted to the Neonatal Intensive Care Unit for respiratory distress and tremors.  On May 25, 2018, Dylan was detained directly from the hospital and placed in out-of-home care.

¶3    On June 8, 2020, the State filed a petition to terminate D.T.'s parental rights to Dylan.[3]  The petition alleged that Dylan was a child in continuing need of protection or services (continuing CHIPS), and that D.T. had failed to assume parental responsibility.  An initial appearance was scheduled for June 29, 2020.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  For ease of reference, we use a pseudonym to refer to D.T. II.

[3]  The parental rights of Dylan's mother, T.K., were also terminated in these proceedings. Her rights are not on appeal in this action.  As a result, this decision focuses on the facts and the proceedings as they relate to D.T.

¶4    On June 29, 2020, D.T. appeared without representation at the scheduled Zoom hearing.[4]  The circuit court instructed D.T. to reach out to the public defender's office for an attorney.  The court set a date of July 28, 2020 for the next hearing.  D.T. confirmed that this date worked for him.

¶5    On July 28, 2020, an attorney appeared on behalf of D.T.; however, D.T. did not appear.  The case manager, A.D., indicated that she had spoken with D.T. the day before and he said he knew about the hearing.  The circuit court, however, observed that the notice from the public defender's office had a different date.  As a result, an adjourned initial appearance was set.

¶6    On August 20, 2020, D.T. appeared with counsel.  D.T. opposed the petition, and requested a fact-finding hearing by jury.  The circuit court instructed D.T. to appear at all court appearances and cooperate with discovery.  The circuit court warned D.T. that if he violated one of those orders, he would be found in default and could lose his right to have a jury trial.

¶7    On October 28, 2020, D.T. did not appear for the scheduled hearing.  However, due to an issue with the hearing notice, the circuit court did not enter a default order.  Subsequently, multiple intervening hearings took place in this case, at which D.T. appeared.[5]

¶8    On August 2, 2021, the date scheduled for a jury trial, D.T. logged onto Zoom late.  D.T. indicated that he had overslept.  Due to another jury trial

---

[4] Due to the global COVID-19 pandemic, this hearing, and the following hearings all took place virtually using Zoom video teleconferencing.

[5] We note that D.T. appeared late at a final pre-trial hearing.  The record, however, suggests that D.T.'s attorney may have told him the incorrect time.

taking precedent, D.T.'s trial was adjourned to November 15, 2021. The court also scheduled a permanency plan hearing for October 8, 2021.

¶9 At the permanency plan hearing on October 8, 2021, D.T. did not appear. Trial counsel indicated that he had sent a text message the day before with the hearing information, and had just tried to call D.T., but nobody answered the phone. The hearing proceeded without D.T.

¶10 On November 15, 2021, the date set for jury trial, D.T. again did not appear. D.T.'s attorney stated that he texted and emailed the hearing information the previous week. D.T.'s attorney also stated that he called D.T. that morning and "I think I woke him up."

¶11 The court noted that it was 9:25 a.m., and the case was scheduled for 9:00 a.m. The State moved to find D.T. in default for failing to appear as this was the "number one jury trial" on the calendar and D.T. did not appear to have a "justifiable excuse for his non-appearance." The Guardian ad Litem joined in the State's motion.

¶12 The circuit court found D.T. in default. The circuit court stated that D.T.'s non-appearance was "egregious." The court explained that D.T.'s case "was the number one trial" and he was previously told that the case "could potentially be the number one trial this morning."

¶13 The circuit court recessed the hearing to 11:00 a.m. to schedule the matter for further proceedings. After the recess, D.T. appeared. D.T. stated that when he woke up his "eyes couldn't focus" so he "couldn't see the information to … get into the Zoom." D.T. stated "I do apologize for that."

¶14    D.T. requested that the circuit court vacate the default judgment. The circuit court accepted D.T.'s apology, but declined to vacate the default finding.  The court stated that "I'm sorry that [you] got the time wrong or slept through the time, this is a very serious case."  The circuit court stated that D.T. could still participate in the dispositional phase if he chose to do so.

¶15    On February 22, 2022, the circuit court heard testimony from case manager M.Y. to "prove-up" the grounds alleged in the petition.  The circuit court also took judicial notice of the underlying CHIPS documents.  The circuit court found that the State had proven both the continuing CHIPS and failure to assume parental responsibility grounds.  The circuit court then found that D.T. was unfit, and the matter proceeded to disposition.

¶16    In the dispositional phase, testimony was taken from:  case manager M.Y., Dylan's mother, T.K., Dylan's paternal uncle, W.K., and D.T.  The circuit court found that it was in Dylan's best interests to terminate D.T.'s parental rights. This appeals follows.  Additional relevant facts will be referenced below.

## DISCUSSION

### I.    Default Judgment

¶17    D.T. first contends that the circuit court erroneously exercised its discretion when it denied his motion to reopen the default judgment.

¶18    A circuit court has both inherent authority and statutory authority to sanction parties for failing to obey court orders. ***Evelyn C.R. v. Tykila S.***, 2001 WI 110, ¶17, 246 Wis. 2d 1, 629 N.W.2d 768.  When a party fails to comply with a court order, a court may enter a default judgment against the party. ***Id.***  A default judgment, however, may only be entered if the court finds that the non-

complying party acted "egregiously" or in "bad faith." ***Dane Cnty. DHS v. Mable K.***, 2013 WI 28, ¶69, 346 Wis. 2d 396, 828 N.W.2d 198 (citations omitted). Egregious conduct is "conduct that, although unintentional, is 'extreme, substantial, and persistent.'" ***Brandon Apparel Grp., Inc. v. Pearson Props., Ltd.***, 2001 WI App 205, ¶11 n.5, 247 Wis. 2d 521, 634 N.W.2d 544 (citation omitted). The failure to comply with court orders without a clear and justifiable excuse constitutes egregious conduct. ***Industrial Roofing Servs., Inc. v. Marquardt***, 2007 WI 19, ¶43, 299 Wis. 2d 81, 726 N.W.2d 898.

¶19 A circuit court may reopen a default judgment for a variety of reasons, including excusable neglect. *See* WIS. STAT. § 806.07(1)(a). Excusable neglect "is that neglect which might have been the act of a reasonably prudent person under the circumstances." ***Giese v. Giese***, 43 Wis. 2d 456, 461, 168 N.W.2d 832 (1969) (citations omitted). It is not the same as "neglect, carelessness or inattentiveness." ***Id.*** The burden of showing excusable neglect is on the party seeking relief from the default judgment. ***Connor v. Connor***, 2001 WI 49, ¶28, 243 Wis. 2d 279, 627 N.W.2d 182.

¶20 Whether to reopen a default judgment is a decision addressed to the sound discretion of the circuit court. *See* ***Dugenske v. Dugenske***, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977). A reviewing court will "generally look for reasons to sustain a circuit court's discretionary determination." ***Miller v. Hanover Ins. Co.***, 2010 WI 75, ¶30, 326 Wis. 2d 640, 785 N.W.2d 493. If the circuit court "sets forth no reasons or inadequate reasons for its decision, we will independently review the record to determine whether the circuit court properly exercised its discretion and whether the facts provide support for the court's decision." ***Id.***

¶21    We disagree with D.T. that the circuit court erroneously exercised its discretion in denying his request to reopen the default judgment.  To start, it is undisputed that D.T. had notice of the November 15, 2021 trial date.  D.T. was advised of the date in advance, and on the morning of the trial, before the proceedings started, trial counsel called D.T.  D.T. was also previously warned by the circuit court that if he did not appear for a court proceeding he would be found in default and could lose his right to have a jury trial.

¶22    In addition, D.T. had failed to appear at the permanency plan hearing immediately preceding the November 15, 2021 trial date, and this was not the first time that D.T. had failed to timely appear for a scheduled trial date.  D.T. had previously appeared late for a scheduled trial date on August 2, 2021, because he overslept.

¶23    As the State observes, a parent's failure to appear as scheduled not only impedes the progression of his or her case, but also the other cases on the circuit court's calendar.  It is the duty of the circuit court to discourage the protraction of litigation and promote the orderly processing of cases.  *See **Trispel v. Haefer***, 89 Wis. 2d 725, 733, 279 N.W.2d 242 (1979).  Thus, we conclude that in this case the circuit court's decision denying D.T.'s motion to reopen the default judgment was reasonable, and did not constitute an erroneous exercise of discretion.

## II.    Sufficiency of the Evidence

¶24    D.T. next contends that there was insufficient evidence to support continuing CHIPS and failure to assume parental responsibility as grounds for his parental unfitness.

¶25    In a challenge to the sufficiency of the evidence, we examine "whether there is any credible evidence to the sustain verdict." *St. Croix Cnty. DHHS v. Michael D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107.  We review the evidence in the light most favorable to the verdict.  *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶39, 333 Wis. 2d 273, 797 N.W.2d 854.  Whether the evidence is sufficient is a question of law that we review *de novo*.  *Id.*, ¶17.

¶26    D.T. first contends that the evidence was insufficient to establish continuing CHIPS because he completed and obtained a certificate for parenting services and anger management, completed a psychological evaluation, and is involved in therapy.  D.T. also notes that he had visits with Dylan for six hours a week and there were not any observations of violence or concerns of violence during the visits.

¶27    We construe D.T.'s argument to mean that insufficient evidence existed to find that he met the conditions for the safe return of Dylan.  *See* WIS. STAT. § 48.415(2)(a)3.; WIS JI—CHILDREN 324.  We disagree.  At the prove-up hearing, the case manager testified that while D.T. completed certain services, D.T. did not make the necessary behavioral changes to meet the conditions for return.  In particular, the case manager testified that D.T. failed to demonstrate the necessary behavioral changes to provide safe care for Dylan, supervise Dylan and place Dylan's needs before his own, meet Dylan's medical needs, keep a safe and clean home, or control his mental health.

¶28    In addition, the case manager testified that there were reports of domestic violence between D.T. and the mother of Dylan.  D.T. was also charged with new domestic violence allegations involving a different person.  Further, according to the case manager, D.T. continued to demonstrate "anger escalation"

during conversations. Thus, we conclude that there was sufficient evidence to establish that D.T. had failed to meet the conditions for return.

¶29 Moreover, even if there was insufficient evidence to establish continuing CHIPS, the circuit court also found that D.T. failed to assume parental responsibility. Only a single ground is needed to find a parent unfit. *See* WIS. STAT. § 48.415.

¶30 To establish failure to assume parental responsibility, the State was required to prove that D.T. did not have a "substantial parental relationship" with Dylan. WIS. STAT. § 48.415(6)(a); *see also* WIS JI—CHILDREN 346. A substantial parental relationship "means the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." WIS. STAT. § 48.415(6)(b). When determining whether a parent has failed to assume parental responsibility, the fact-finder must look at the totality of circumstances and "should consider a parent's actions throughout the entirety of the child's life[.]" *Tammy W-G.*, 333 Wis. 2d 273, ¶¶22-23.

¶31 D.T. again notes that he completed and obtained a certificate for parenting services and anger management, completed a psychological evaluation, is involved in therapy, had visits with Dylan, and there were not any observations of violence or concerns of violence during the visits. According to D.T., this establishes sufficient evidence that he had a "substantial parental relationship" with Dylan. Again, we disagree.

¶32 At the prove-up hearing, the case manager testified that D.T. failed to exercise responsibility for the daily supervision, education, or protection of Dylan. *See* WIS. STAT. § 48.415(6)(b). D.T. never lived with Dylan or provided day-to-day care for Dylan. In addition, the case manager testified that D.T.'s

visitations with Dylan were not consistent, and the visits that occurred were fully supervised. Thus, we conclude that there was sufficient evidence that D.T. failed to assume parental responsibility.

### III.    Best Interests of the Child

¶33    Finally, D.T. argues that the circuit court erroneously exercised its discretion at the dispositional hearing when it determined that termination of D.T.'s parental rights was in the best interests of Dylan.

¶34    The decision to terminate parental rights is discretionary. *Gerald O. v. Cindy R.*, 203 Wis. 2d 148, 152, 551 N.W.2d 855 (Ct. App. 1996). When deciding whether to terminate parental rights, the circuit court should explain the basis for its decision, considering the standard and factors set forth in WIS. STAT. § 48.426; *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402. The circuit court properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982).

¶35    Here, the circuit court discussed each of the factors set forth in WIS. STAT. § 48.426(3). The circuit court found that there was an adoptive resource who was "ready, willing and able and committed" to adopt Dylan, Dylan's age and health did not provide a barrier to adoption, Dylan had been out of the home for approximately four years, and Dylan was too young to state his wishes regarding adoption. The court also noted that D.T.:

> has been able to find a place to live and he seems to be moving in the right direction in trying to get his life together but while the parents were getting their lives together so was [Dylan]. He has a life that was going on as

10

well and it was a time that he was not being cared for by either parent.

¶36     In addition, the circuit court found that Dylan did not have a substantial relationship with D.T. or any other biological family members.   In particular, the circuit court observed that Dylan had never lived with D.T. and D.T. had been "intermittent and sporadic with visits[.]"  The court also found that if the petition for termination of parental rights was granted, Dylan would be able to enter into a more stable and permanent family relationship.   The court stated that Dylan "deserves a stable situation where there is no domestic violence involved, where the parents are able to deal with their emotional and impulsive behaviors."

¶37     D.T. concedes that the circuit court considered each of the factors in WIS. STAT. § 48.426(3), but argues that the circuit court's "weighing" of the evidence was erroneous.  According to D.T., the court gave too much weight to the facts surrounding Dylan's removal and that D.T. was incarcerated at the time of Dylan's removal.  D.T. also argues that the circuit court did not sufficiently account for his love for Dylan, his desire to have Dylan returned to him, his recent efforts, and the fact that at the time of the hearing, he was living with Dylan's paternal uncle, W.K., who could provide a residence and support for Dylan.

¶38     In essence, D.T.'s argument asks that we examine the evidence and weigh it differently than the circuit court.   The weight and credibility of the evidence, however, are solely for the circuit court. ***Bonstores Realty One, LLC v. City of Wauwatosa***, 2013 WI App 131, ¶6, 351 Wis. 2d 439, 839 N.W.2d 893. Here, the circuit court's decision that it was in Dylan's best interests to terminate D.T.'s parental rights was within its sound discretion.  The circuit court examined the relevant facts, applied the proper legal standards, and, using a demonstrated

rational process, reached a reasonable conclusion. *See Loy*, 107 Wis. 2d at 414-15.

¶39    For the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.