Janice E. RUTAN, Plaintiff-Respondent,

BLUE CROSS BLUESHIELD OF MINNESOTA and Cigna
Healthcare, Involuntary-Plaintiffs,

v.

Sandra Kay MILLER, Jayco Enterprises, d/b/a Jet, Inc.,
and St. Paul Fire & Marine Insurance Company,
Defendants-Appellants.

Court of Appeals

*No. 97–0547–CR. Submitted on briefs July 21, 1997.—Decided
August 26, 1997.*

(Also reported in 570 N.W.2d 54.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Beverly Wickstrom* of

*Misfeldt, Stark, Richie & Wickstrom,* Eau Claire, and *Katherine E. Sprague* of *Candlin & Wright,* Blooming-ton, Minnesota.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark J Gherty* and *Susan Schleif Gherty,* Hudson.

Before Cane, P.J., Myse and Nolan,[1] JJ.

MYSE, J.   Sandra Kay Miller, Jayco Enterprises, and St. Paul Fire and Marine Insurance Company (col-lectively, Miller) appeal an order denying a request for an extension of time to file an answer, and a subse-quent order directing default judgment against them. The appeal is based on Miller's assertion that excusa-ble neglect caused the answer to not be filed on time. Miller further contends that the trial court erred by restricting her right to discovery on a hearing for dam-ages ordered subsequent to the entry of default judgment on liability.

Miller argues that the trial court erred by finding no excusable neglect because her attorney, Katherine E. Sprague, reasonably relied on (1) a courtesy agree-ment extending the time to file an answer until twenty days after the last of three named defendants was served, and (2) the representation of the plaintiff, Janice Rutan's counsel's office, that the last defendant had not yet been served. Based on the representation, which turned out to be mistaken, and the courtesy agreement, Sprague miscalculated when the answer was due and filed an answer six days late.

We conclude that Sprague's conduct constituted excusable neglect, and therefore reverse the trial

---

[1] Circuit Judge J. Michael Nolan is sitting by special assign-ment pursuant to the Judicial Exchange Program.

court's denial of Miller's request for an extension of time to file an answer, and remand for further proceedings consistent with this opinion. We do not address the claim that the trial court erred by restricting the right to additional discovery on the damages hearing.

Janice Rutan commenced this lawsuit for injuries she sustained in an automobile accident with Sandra Kay Miller, the driver of a truck operated by Jayco Enterprises, d/b/a Jet, Inc., and insured by St. Paul Fire & Marine Insurance Company. Jayco and St. Paul were both served on September 25, 1996, but Miller was not. Attorney Thomas Misfeldt, who initially represented Miller, Jayco and St. Paul, contacted Rutan's counsel and requested an extension of time for filing an answer until twenty days after Miller, the last defendant, was served. A courtesy agreement was completed, and it was agreed that no answer would be required from Miller, Jayco and St. Paul until twenty days following service on Miller. Misfeldt followed up the agreement by sending Rutan's counsel a confirming letter.

On September 30, 1996, defense of the file was transferred to Sprague of the Candlin & Wright law firm. Sprague was advised of the courtesy agreement between Misfeldt and Rutan's attorney and, on October 14, before an answer to the September 25 complaint would otherwise be due, Sprague attempted unsuccessfully to contact Rutan's counsel. Sprague did, however, speak with Tina Kuharski, a paralegal from Rutan's attorney's office, and Kuharski informed Sprague that the terms of the prior courtesy agreement with Misfeldt would still be in force as to Sprague.

Sprague also discussed with Kuharski whether service had been accomplished on each of the defendants. Because Miller was an over-the-road truck driver

and lived out of state, the parties anticipated some difficulty in obtaining service upon her. Kuharski apparently represented to Sprague that as of the date of their conversation, Miller had not yet been served; but Rutan and Miller disagree as to the exact nature of the representation. Miller's attorney claims that Kuharski advised her unequivocally that all defendants had not yet been served. Rutan does not specifically dispute this account in her brief; however, during the trial court hearing, Rutan stated that this issue is disputed and that Kuharski merely represented that she did not know if all of the defendants were served. The trial court did not resolve this question of fact, finding it unnecessary to the outcome of the case. For reasons discussed below, we also believe resolution of this question is unnecessary.

After the conversation with Kuharski, Sprague assumed she had at least twenty days in which to file an answer. Sprague therefore marked her calendar twenty days ahead, or November 5, as the deadline by which to file. Contrary to the knowledge of both Sprague and Kuharski, however, Miller had in fact been served on October 4; Kuharski was apparently unaware of this during the October 14 phone call because the affidavit of service was not received by Rutan's counsel until October 16.

On October 21, Rutan's attorney filed the affidavit of service.[2] That same day, Kuharski telephoned and left a message for Sprague stating that they were not responsible for informing her when all defendants were served. Although Sprague felt this message to be peculiar, she still felt justified in her assumption that an

[2] Although Rutan presented the affidavit of service for filing on October 21, the court clerk's date stamp reveals that filing actually occurred on October 23.

answer would not be due until at least November 5. On October 28, five days after the affidavit of service was filed and over a week before her mistaken deadline of November 5, Sprague mailed the answer to Rutan and presented it for filing; on October 30 the answer was filed.[3] Based upon the date that Miller was actually served, however, the reply was filed six days later than the October 24 deadline.[4] On October 25, Rutan's attorney filed for default judgment.

At the November 8 hearing on Miller's and Rutan's cross-motions for an extension of time within which to file an answer, to strike the answer and for default judgment, the circumstances surrounding the delay in answering as stated above were presented to the trial court. The court found Sprague's failure to reduce the courtesy agreement to writing to be inexcusable and determined that the tardiness in filing the answer on Miller's behalf was not the result of excusable neglect. Accordingly, the trial court denied Miller's motion to extend the time to answer, granted Rutan's motion to strike the answer, granted Rutan's motion for default judgment as to liability, and set the matter for a hearing on damages for a later date. At the conclusion of the

---

[3] Although Sprague claims that the answer was filed on October 28, the court clerk's date stamp reveals that filing actually occurred on October 30.

[4] It is unclear whether the deadline under the courtesy agreement would be October 24 or 25. Typically, in counting the twenty-day period under § 802.06(1), STATS., the day of service is not counted. If the day of service likewise is not counted under the agreement, the deadline would be October 25. At the hearing held on November 8, Sprague states her belief that the due date was October 25. Because both Rutan and Miller state in their briefs that the due date was October 24, however, we need not decide this issue.

damages hearing, the court awarded $290,269.17, plus costs in the amount of $3,407.17.

The trial court's determination in granting a default judgment and a concomitant motion for enlargement of time within which to answer is reviewed under an erroneous exercise of discretion standard. *Oostburg State Bank v. United S&L*, 125 Wis. 2d 224, 238, 372 N.W.2d 471, 477–78 (Ct. App. 1985). A misapplication or an erroneous view of the law is an erroneous exercise of discretion. *See State v. Hutnik*, 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968) (using "abuse of discretion" terminology). Where the trial court applies certain specific and uncontested facts to determine the existence of excusable neglect, a question of law is presented that is determined without deference to the trial court's determination. *See State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601, 604–605 (1981) (when the principal facts are undisputed, an appellate court is not bound by the trial court's findings, and may decide the case as a matter of law). In addition, where the trial court fails to make a finding of fact and the judgment is not clearly supported by the preponderance of the evidence, the appellate court may reverse. *Id.*

We hold that the trial court erred by finding that no excusable neglect occurred. Excusable neglect is conduct that "might have been the act of a reasonably prudent person under the same circumstances." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727, 731 (1982). In determining whether to grant the dilatory party relief, the court must also look beyond the causes for neglect to the interests of justice. *Id.* at 469, 326 N.W.2d at 731. The interests of justice

require the court to consider the sometimes contradictory interests in affording litigants a day in court, and in ensuring prompt adjudication. *Id*. In making this assessment, the court should look to such factors as "whether the dilatory party has been acting in good faith, and whether the opposing party has been prejudiced." *Id*. 477, 326 N.W.2d at 735. A court should also consider the existence of prompt remedial action as "a material factor" in assessing both the reasonableness of the delay and the interests of justice. *Id*.

The trial court concluded that Sprague failed to demonstrate the delay in filing the answer was the result of excusable neglect. The court stated it was inexcusable for counsel to fail to reduce the courtesy agreement reached between Rutan's attorney and Sprague to writing. We do not agree. It is immaterial whether the agreement was reduced to writing where, as here, the terms of the courtesy agreement are not in dispute. Even if the agreement had been reduced to writing, the delay would have resulted.[5]

There can be no question but that the cause of the delay in filing the answer was a combination of two factors: Kuharski's representation to Sprague, and the substantial unaccounted-for delay of nineteen days between service of Miller and the filing of notice of service. As noted earlier, it is apparently disputed whether counsel was advised by Kuharski (1) that Miller unequivocally had not been served as of October 14, 1996, or (2) that Rutan's attorney did not know that

---

[5] We also note that the agreement that was applied to Sprague originally was confirmed in writing.

102

Miller had been served.[6] Even if Rutan's version of the phone conversation is believed, however, counsel still acted reasonably by filing her answer on October 30. It would be reasonable to assume that Rutan would have received notice of service shortly after it was achieved. Thus, even if Kuharski represented that they had no notice of service on October 14, Sprague could reasonably have assumed this meant at least that service was not within the most recent past. If this was true, filing her reply by October 30 would have been timely.

We therefore conclude that the combination of these two events made it reasonable for Miller's attorney to believe that the filing date was November 5. Turning next to consider the interests of justice, we also conclude that this factor points in favor of extending the time for Miller to file an answer. Sprague's reliance on the paralegal's representation was in good faith.[7] In speaking with Kuharski, Sprague was not seeking to take advantage of the situation. Indeed, Sprague earlier had tried unsuccessfully to speak with Rutan's attorney directly. Nothing in the record suggests that Sprague's reliance on the paralegal's representation was in any way the product of a

---

[6] Rutan never expressly denies in her brief Miller's representations of the conversation between Sprague and Kuharski. At the November 8 hearing, however, Rutan stated that the content of the conversation is in dispute.

[7] "Good faith" is defined in BLACK'S LAW DICTIONARY, 693 (6th ed. 1990), as

[A]n honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage . . . .

. . . .

An honest intention to abstain from taking any unconscientious advantage of another, even through technicalities of law, together with absence of all information, notice, or benefit or belief of facts which render transaction unconscientious.

wrongful design. Furthermore, Sprague demonstrated good faith by filing her reply one week before she reasonably expected it to be due.

We also note the absence of any prejudice to Rutan caused as a result of the delay. Rutan merely argues that prejudice would result without default judgment being entered. Of course, allowing Miller's answer to be filed despite the delay will mean that the grant of default judgment was improper, permitting the case to proceed possibly to Rutan's detriment. But this is not what prejudice means. Rutan does not allege, for instance, that witnesses are unavailable or evidence is lost. We conclude, therefore, that this factor clearly points in favor of extending the time in which to answer.

Finally, we note that Sprague filed prompt remedial action. Courts should consider whether the motion to enlarge the time was filed within a reasonable time after the expiration of the statutory period; and, if not, should consider whether there was a reasonable basis for the delay. *Id.* at 477, 326 N.W.2d at 735. Even assuming that the filing was not within a reasonable time, we believe Sprague had a reasonable basis for her delay in so filing. As stated above, Sprague reasonably felt she had until November 5 to file her answer. By filing her answer a week before she thought it to be due, and by filing a motion to enlarge the time within four days of Rutan's motion to strike the answer, Sprague's actions were reasonably timely.

In arguing that Sprague's actions were not due to excusable neglect, Rutan first argues that the delay was due to the nature of the agreement for the extension of time that was requested (i.e., twenty days after the last defendant was served, instead of twenty days

after October 14), and that Miller should bear the consequences of structuring the courtesy agreement in such a fashion. Rutan, however, fails to realize that it was not the nature of the agreement but, rather, Sprague's reasonable reliance on the representation, coupled with the unanticipated nineteen-day delay between service of the last defendant and filing, that caused the delay. Under normal circumstances, notice of service would have been accomplished in a matter of days from the fact of service, and the answer could have been prepared and filed within the time envisioned by the courtesy agreement achieved by counsel. Due to the lengthy delay in filing the affidavit of service, however, even if Sprague had been aware of the filing on October 23, there would have been insufficient time to prepare an answer by the October 24 deadline.

Rutan also argues that Sprague should be charged with notice that Miller, her client, was served on October 4, notwithstanding the delay in failing to file the affidavit of service. It is unfortunate that Miller did not advise Sprague of service. Nonetheless, counsel for both sides were aware that Miller was an over-the-road truck driver who lived out of state, and that there would be delays and difficulty in serving her. The trial court in its analysis of the claim of excusable neglect did not see fit to charge Sprague with constructive knowledge of the date of service on Miller. Under the circumstances of this case, we also are unwilling to find that this establishes unreasonable conduct.

Finally, Rutan argues that Sprague was responsible for discovering the date of service, and that she had no obligation to advise Sprague that service had been accomplished. Rutan also goes so far as to argue that when Kuharski left Sprague a message advising her that they were under no obligation to advise of the date

105

of service, Sprague should have been alerted. Without commenting on the strident tone of such an argument, it is clear that even if Sprague had learned of the service on the date it was filed, her time for answer was virtually over. We find no fault in Miller's failure to discover the affidavit of service showing service had been obtained on October 4 considering Kuharski's earlier representation. Moreover, the answer was filed within seven days of the filing of the affidavit of service. Such a prompt response is a factor properly considered in determining whether the failure to answer was the result of excusable neglect, as we discussed above.

We conclude that Sprague's conduct was reasonable under the circumstances of this case, and the failure to file a timely answer was the result of excusable neglect. We believe that Sprague acted reasonably in regard to the timing of her answer based upon the representations made on October 14, 1996, and the unusual and unaccounted for delay in regard to the preparation and filing of the affidavit of service on Miller. We again note that the answer was filed within six days of the date it was due, and that there has been no showing of prejudice. While we respect the trial court's desire to process this case quickly, the combination of the circumstances involved here is sufficient to demonstrate that Sprague's conduct was reasonable and that the delay in answering was the result of excusable neglect.

The law views default judgments with disfavor, and prefers wherever reasonably possible to afford litigants a day in court and a trial on the issues. *Id.* at 469, 326 N.W.2d at 731. Because we have concluded that the defendants' answer was the result of excusable neg-

lect, we hold that the trial court erred by denying the motion to extend the time for answer. Because Miller will now get her day in court, we need not address Rutan's further appeal on the claim for additional discovery rights at the damages hearing.

*By the Court.*—Judgment reversed and cause remanded with directions.