Donald R. BINSFELD and Cynthia M. Binsfeld,
Plaintiffs-Appellants,†

REGENT INSURANCE COMPANY, Involuntary-Plaintiff-
Co-Appellant,

v.

Donald S. CONRAD and ABC Insurance Company,
Defendants-Respondents,

John P. MORTENSEN, Anthony F. Mortensen, d/b/a
Mortensen Properties, and JKL Insurance
Company, Defendants.

Court of Appeals

*No. 03–1077. Submitted on briefs December 1, 2003.—Decided
March 23, 2004.*

2004 WI App 77

(Also reported in 679 N.W.2d 851.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *George Burnett* and *Liebmann, Conway, Olejniczak & Jerry, S.C.*, of Green Bay.

On behalf of the defendant-respondent Donald Conrad, the cause was submitted on the brief of *Sandra L. Hupfer, Christina L. Peterson*, and *Stellpflug, Janssen, Hammer, Kirschling & Bartels, S.C.*, of DePere.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Donald Binsfeld appeals a summary judgment concluding that Donald Conrad was not liable under Wisconsin's safe place statute, WIS.

S̲t̲a̲t̲. § 101.11,[1] for Binsfeld's work-related injuries. Binsfeld also appeals the circuit court's denial of a motion for default judgment, arguing that Conrad did not show excusable neglect sufficient to justify filing his answer four days after the deadline. We conclude that the circuit court appropriately exercised its discretion by denying the default judgment and that the safe place statute does not apply to Conrad. We therefore affirm the judgment.

## Background

¶ 2. Conrad owned land near Abrams, Wisconsin, abutting U.S. Hwy. 41. When Conrad purchased the land in 1991 from David Dennison, an outdoor advertising sign was already in place. John and Anthony Mortensen, d/b/a Mortensen Properties, owned the sign. They purchased the sign from Lawrence Verheyden in 1989, approximately four months after Verheyden signed a ten-year lease with Dennison. Verheyden conveyed the lease to Mortensen.

¶ 3. On July 24, 1998, while working on the sign for Jones Sign Company, Binsfeld was electrocuted by 14,000 volts, falling forty-five feet to the ground. He suffered 75–80% disability. In addition to his various physical problems, he also suffers memory loss and depression.

¶ 4. An engineering analysis conducted for Binsfeld revealed at least fifteen structural problems with the sign and at least nine OSHA violations. Binsfeld filed suit July 5, 2001, naming Conrad as a defendant and alleging negligence by maintaining a defective sign

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

on his property. The Mortensens were added after discovery revealed they owned the sign.

¶ 5. Binsfeld agreed to an extension of the time for filing Conrad's answer. When the answer was filed four days after the extension expired, Binsfeld filed a motion to strike the answer and seeking a default judgment. The circuit court denied the motion, concluding that Conrad's neglect was excusable and the interests of justice required the case to proceed to trial.

¶ 6. Conrad then filed a motion for summary judgment, claiming he had no duty to Binsfeld at common law. Binsfeld's brief opposing the summary judgment raised the applicability of the safe place statute. Conrad responded that he was not an owner of a place of employment.

¶ 7. The circuit court concluded that Binsfeld failed to state a claim upon which relief could be granted relative to Conrad. The court dismissed Conrad from the case. Binsfeld appeals, arguing that the safe place statute applies to Conrad.

## Discussion

■■■■

¶ 8. We review summary judgments de novo, using the same methodology as the circuit court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). This particular case presents a question of statutory interpretation, which we also review de novo. *Hutson v. State Personnel Comm'n*, 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212.

## Applicability of the Safe Place Statute

¶ 9. The first issue is whether Conrad is subject to the safe place statute, Wis. Stat. § 101.11(1), which creates an "Employer's duty to furnish safe employment and place."

> Every employer . . . shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof. . . . *Every employer and every owner of a place of employment* . . . shall so construct, repair or maintain such place of employment . . . as to render the same safe. (Emphasis added.)

¶ 10. Wisconsin Stat. § 101.01 provides relevant definitions.

> (4) "Employer" means any person . . . having control or custody of any . . . place of employment . . . .
>
> . . . .
>
> (10) "Owner" means any person . . . having ownership, control or custody of any place of employment . . . .
>
> (11) "Place of Employment" includes *every place . . . and the premises appurtenant thereto where* either temporarily or permanently any industry, trade or *business is carried on,* or where any process or operation, directly or indirectly related to any industry, trade or business is carried on, *and where any person is,* directly or indirectly, *employed by another* for direct or indirect gain or profit . . . . (Emphasis added.)

¶ 11. Binsfeld argues that his place of employment encompasses both Mortensen's sign and Conrad's appurtenant land and that Conrad is negligent because he maintained a defective structure on his property. We

347

reject Binsfeld's contention that land that is merely appurtenant to a "place . . . where . . . business is carried on" is a "place of employment."

¶ 12. We agree with Binsfeld that the sign was his "place"[2] of employment, but we consider it to be wholly separate from the land. This may be a slight matter of semantics, because the sign must be installed in the ground somewhere. However, the sign is Mortensen's personal property, is wholly removable from the land, and predates Conrad's purchase of the land.

¶ 13. We also accept, for purposes of this case, that Conrad's land is literally appurtenant to Mortensen's sign. However, we reject Binsfeld's premise that this geographic proximity is itself sufficient to render Conrad's land a "place of employment." The safe place statute contemplates that both the "place" and appurtenant premises will be subject to ownership, control, or custody of the same employer or owner.[3]

¶ 14. An "owner" must have ownership, custody, or control of the place of employment—that is, every "place" *and* the premises appurtenant thereto. *See* WIS. STAT. § 101.01(10) and (11). Thus, an owner of appurtenant land who does not also have ownership, custody, or control of the "place" cannot be liable for injuries

_____

[2] Because the term "place of employment" is defined as "every place . . . and the premises appurtenant thereto," when we wish to refer to the place of employment *exclusive* of the appurtenant premises, we will use "place" in quotation marks.

[3] Binsfeld does not contend that Conrad is an employer under the statute.

sustained at the "place." There is no dispute that Conrad exercised no ownership, custody, or control over Mortensen's sign.[4]

¶ 15. Imposing safe place liability on the owner of appurtenant premises simply because of the physical proximity would effectively make that owner an insurer for the "place," a duty the safe place statute never intended to create. *See Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 26, 284 N.W.2d 692 (Ct. App. 1979). For the owner of appurtenant premises to be liable, the injury would have to occur on the premises themselves.[5]

¶ 16. This reasoning is consistent with other safe place cases. In *Hansen v. Schmidman Props.*, 16 Wis. 2d 639, 115 N.W.2d 495 (1962), where Hansen was injured on the appurtenant premises, the supreme court declined to impose liability because the employer[6] at the "place" had neither control nor custody of the appurtenant area. *Id.* at 642. Conversely, the owner of appurtenant premises should not be held liable if he or she does not also have ownership, control, or custody of the

---

[4] We note there is no requirement that ownership, custody, or control need be exclusive to any singular owner or employer. *Schwenn v. Loraine Hotel Co.*, 14 Wis. 2d 601, 607, 111 N.W.2d 495 (1961).

[5] Binsfeld also frames the issue on appeal as whether a landlord like Conrad may delegate responsibility under the safe place statute and avoid liability for structural defects on his property. However, non-delegability depends on there first being a duty. Because we conclude that the safe place statute does not apply to Conrad, he has no duty he can be prohibited from delegating.

[6] The only difference between an employer and an owner for safe place purposes is that an owner has "ownership, control or custody" of a place of employment whereas an employer need only exercise control or custody over the place of employment. Wis. Stat. §§ 101.01(4) and (10).

"place" of employment because the owner is not in a position to prevent the hazards that render the "place" unsafe.

¶ 17. In *Schwenn v. Loraine Hotel Co.*, 14 Wis. 2d 601, 111 N.W.2d 495 (1961), the employer *did* have control and custody of the appurtenant premises, so liability was assessed even though there was a different owner.[7] Thus, there would be liability if the owner of the appurtenant premises also had ownership, control, or custody of the "place."

¶ 18. Because Conrad does not meet the statutory definition of an owner of a place of employment, the safe place statute does not apply. Indeed, Binsfeld himself notes that it "goes without saying that one who neither owns nor controls a place of employment has no responsibility under the Act for the simple reason that the language of the Act does not impose it." Summary judgment was proper in this case.[8]

## Motion for Default Judgment

¶ 19. The second issue is whether the circuit court erred by denying Binsfeld's motion for default judgment. Binsfeld complains that Conrad failed to

---

[7] Even then, the safe place statute might not apply if the premises do not qualify as a place of employment. Instead, the ordinary negligence standard would apply.

[8] This is not to say that landowners with hazardous conditions on their land will never be liable for injuries related to those conditions. In such situations, the common law standard of negligence probably applies. We note that in his brief supporting his motion for summary judgment, Conrad argued that ordinary negligence could not be found because the foreseeability of Binsfeld's injuries was too remote. Binsfeld never responded to this argument in his brief opposing summary judgment, nor are we presented with any argument on the common law standard on appeal.

timely file his answer and failed to demonstrate excusable neglect. Conrad responds that he should not be blamed for the late filing because the insurance company was confused, in part by Binsfeld's counsel.

■■■■

¶ 20. A circuit court's decision whether to grant default judgment is reviewed under an erroneous exercise of discretion standard. *Rutan v. Miller*, 213 Wis. 2d 94, 101, 570 N.W.2d 54 (Ct, App. 1997). A discretionary decision will be affirmed if it is based on the facts of record and the appropriate law. *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Thus, the record on appeal should reflect the circuit court's reasoned application of the appropriate legal standards to the relevant facts. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 471, 326 N.W.2d 727 (1982). Findings of fact are not disturbed unless they are clearly erroneous. WIS. STAT. § 805.17(2). If the circuit court sets forth inadequate reasons for its decisions, we may review the record ourselves to determine whether the court exercised its discretion and whether the facts provide support for the determination. *Hedtcke*, 109 Wis. 2d at 471.

¶ 21. Binsfeld argues that the court erred when it failed to grant his motion for default judgment because Conrad failed to demonstrate excusable neglect. Binsfeld also argues that the record shows the court failed to address the appropriate legal standard and that the record fails to support the circuit court's determination that the interests of justice required denying the motion.

¶ 22. The summons and complaint were served July 16, 2001, giving Conrad until August 30 to file an answer. On August 28, Binsfeld agreed to a twenty- or thirty-day extension. Assuming thirty days were granted, the due date became October 1 because of an

351

intervening weekend. Conrad's answer was filed October 5. There is no dispute regarding these basic facts.

¶ 23. A party filing its answer late must demonstrate excusable neglect for the delay. WIS. STAT. § 801.15(2)(a). Excusable neglect is conduct that "might have been the act of a reasonably prudent person under the same circumstances." *Hedtcke*, 109 Wis. 2d at 468 (citation omitted). The law, however, views default judgments with disfavor. *Rutan*, 213 Wis. 2d at 106. Thus, the circuit court may also look beyond the causes of neglect to the interests of justice in deciding whether to grant a default. *See id.* at 101.[9]

¶ 24. The circuit court, after hearing argument, ruled:

> [I]n the totality of the circumstances . . . the interest of justice causes me to proceed in this case . . . . [E]xcusable neglect, although it's defined, sometimes it's not as well settled or objective as can be. I'm satisfied when I look at all the circumstances of the case, that it warrants a denial of the motion for default judgment . . . .

While this oral pronouncement is brief, we are satisfied that it reflects the court's consideration of the appropriate legal standard, excusable neglect by the dilatory party. Indeed, the court noted in its written order that it determined there was excusable neglect. The oral ruling also reflects that "the circuit court must go further than considering the causes for the neglect. The interests of justice require the circuit court to be aware

---

[9] If, however, the circuit court does not find excusable neglect, it is precluded from considering the interests of justice. *Williams Corner Investors, LLC v. Areawide Cellular LLC*, 2004 WI App 27, ¶ 19, 676 N.W.2d 168.

of the effects of an order denying or granting relief." *Hedtcke*, 109 Wis. 2d at 469.

¶ 25. The court did not, however, apply the facts explicitly to these standards, so we review the record to see if, indeed, "the totality of the circumstances" supports the court's decision. *See id.* at 471.

██

¶ 26. It is undisputed that Binsfeld agreed to the extension that made the new filing deadline October 1. He argues several reasons why Conrad should not have had to request the extension and why that delay was unreasonable. However, because Binsfeld granted the deadline as a courtesy, we consider this invited error and will not review it. *See Zindell v. Central Mut. Ins. Co.*, 222 Wis. 575, 582, 269 N.W. 327 (1936). Thus, we need only examine the delay between October 1 and October 5.

██

¶ 27. Conrad had insurance policies for various properties through different companies, and his insurance agent had difficulty locating the appropriate insurer for the property in question. The first insurance company notified of the claim was not the insurer. When the actual insurer, Germantown Mutual Insurance Company, was notified of the claim on September 25, its representative, Ed Kyle, attempted to verify the answer's due date, calling Binsfeld's attorney, George Burnett. Kyle claims Burnett promised to get back to him with the deadline but never did. In the meantime, Kyle retained counsel, who received a copy of the summons and complaint on October 2.

¶ 28. Counsel claims to have spoken on October 3 to Burnett's assistant, who said she would check on the due date, but did not think Burnett was concerned about it. On October 4, Burnett called counsel to inform

her the extension had passed, although he did not know what he was going to do about it. On October 5, Germantown filed an answer on its and Conrad's behalf.

¶ 29. Burnett claims that he told Kyle in their first conversation that an extension of approximately thirty days had been granted and that Binsfeld would not agree to more time. Further, while Conrad argues that thirty-four days is approximately thirty days, Binsfeld responds that "approximately thirty days" was the best characterization for the twenty- to thirty-day extension.

¶ 30. It is apparent to us that the "totality of the circumstances" to which the circuit court referred considers this confusion to be the primary cause of the delay. The court took both accounts at face value and concluded there was excusable neglect because of ineffective communication. Conrad filed his answer four days after the due date. Under his account, that filing date was the day after he learned the deadline had passed. This is reasonably prompt. *See Rutan*, 213 Wis. 2d at 102 (court should consider prompt remedial action when assessing the interests of justice). In addition, the slightly late filing does not appear to have impacted the dates of any subsequent proceedings including the trial, and Binsfeld claims no prejudice from the delay.

¶ 31. We may also affirm for reasons other than those relied upon by the circuit court. *Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973). Although the circuit court did not address it specifically, an additional consideration for the interests of justice is whether there is a meritorious defense to the claim. *See Shirk v. Bowling, Inc.*, 2001 WI 36, ¶ 19,

242 Wis. 2d 153, 624 N.W.2d 375. Because we have concluded as a matter of law that the safe place statute is inapplicable to Conrad, his defense that he is not an employer is meritorious and therefore justice would not be served by imposition of a default judgment.

*By the Court.*—Judgment affirmed.