Estate of Dale Otto, by Personal Representative
Shelley Otto, Shelley Otto, Ashley Otto and
Amanda Otto, Plaintiffs-Respondents,

v.

Physicians Insurance Company of Wisconsin, Inc.,
Defendant-Appellant,†

Charles L. Folkestad, M.D.,
Terrance J. Witt, M.D., Red Cedar Clinic -
Mayo Health System and Wisconsin
Patients Compensation Fund,
Defendants,

Valley Health Plan, Inc. and
Blue Cross & Blue Shield of Nebraska,
Subrogated Defendants.

Court of Appeals

*No. 2006AP1566. Submitted on briefs May 8, 2007.
—Decided July 24, 2007.*

2007 WI App 192

(Also reported in 738 N.W.2d 599.)

† Petition to review granted 12/19/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael B. Van Sicklen* and *Theresa A. Andre* of *Foley & Lardner LLP*, Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *John L. Cates, Michael J. Luebke* and *Heath P. Straka* of *Gingras, Cates & Luebke, S.C.*, Madison.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Physicians Insurance Company of Wisconsin, Inc. (PIC), appeals a default judgment against it totaling $972,469.81. PIC asserts that: (1) the interests of justice prohibit entry of the default because the plaintiffs suffered no prejudice; (2) if the default was appropriate, the court should have held that PIC was only precluded from challenging coverage, not the amount of damages; (3) the court failed to give PIC appropriate notice the other defendants were being dismissed; and (4) the court should have offset the damage award by the amount paid by subrogated insurer Blue Cross & Blue Shield of Nebraska. We reject PIC's first three arguments. However, because the statute of limitations has run on Blue Cross's potential subrogation claim, we conclude PIC is entitled to an offset of the subrogated amount. Accordingly, we affirm in part, reverse in part, and remand with directions.

## Background

¶ 2. Dale Otto was a patient of Dr. Charles Folkestad beginning in the 1980s. Otto also began seeing Dr. Terrance Witt in 1999. Otto had been treated by both doctors for gastroesophageal reflux disease for this entire time period. Despite Otto's ongoing symptoms, the doctors allegedly failed to conduct any further testing to update or otherwise check that diagnosis. In September 2002, Otto was diagnosed with metastatic esophageal cancer.

¶ 3. On May 21, 2003, Otto, his wife Shelly, and their daughter Ashley filed a medical malpractice complaint against Folkestad, Witt, the Red Cedar Clinic where the doctors worked, the Wisconsin Patients Compensation Fund, and fictitious insurers. Otto died from

203

cancer on September 28, 2003. On October 30, an amended complaint was filed, adding Otto's other daughter Amanda as a plaintiff, substituting Otto's estate for him personally,[1] naming PIC specifically as the insurer for the doctors and the clinic, and identifying Blue Cross's subrogation interest based on payments made on Otto's behalf.

¶ 4. Otto sought to serve attorney Guy DuBeau with the summons and complaint against PIC. DuBeau had been hired to defend the doctors, and believed he was representing PIC, but refused service on its behalf. On November 5, 2003, DuBeau filed an answer on behalf of the doctors and the clinic. He claims that the answer omitted PIC in its caption because of a typographical error. However, Otto had not yet served PIC at that time. Otto eventually served PIC personally through its vice-president of claims on November 20, 2003. On August 23, 2004, DuBeau filed and served an answer to the amended summons and complaint on PIC's behalf.

¶ 5. In late December 2004, more than a year after the answer was due, Otto moved for a default judgment against PIC and, shortly thereafter, moved to strike PIC's answer. PIC moved to enlarge the time for filing and serving its answer.

¶ 6. In June 2005, the court found there was no excusable neglect, struck PIC's answer, and held it in default for failure to timely serve an answer. Following the decision, PIC asserted that because the doctors and the clinic had answered and denied negligence, the default meant only that PIC could no longer contest coverage; Otto still had to prove negligence. The court

---

[1] For the remainder of this opinion, we will refer to the plaintiffs collectively as "Otto."

disagreed and concluded PIC was liable to Otto for the entire amount of damages that had yet to be determined.

¶ 7. At the subsequent hearing on damages, DuBeau asked that any judgment against PIC be offset by the amount the subrogated insurers had paid, arguing the statute of limitations had expired on their claims. The court denied the motion and entered judgment for what it concluded were Otto's entire damages.

¶ 8. During the damages hearing, the court apparently called current appellate counsel for PIC and asked if PIC would stipulate to a dismissal of the other defendants. While the attorney's law firm is generally PIC's choice for appellate work, no one from the firm had yet appeared in this case because procedurally, the case was still in the trial court. Accordingly, the attorney was perplexed by and reluctant to answer the court's inquiry. Nevertheless, the doctors and the clinic were eventually dismissed from the case. PIC appeals.

## Discussion

¶ 9. PIC alleges four errors on appeal. First, it asserts the default judgment was improper. It claims there is no prejudice to Otto and, further, asserts that Otto waived the right to seek a default because more than a year had passed between the answer's due date and the motion for default. Second, PIC asserts the court erred when it declined to limit the default to a finding of coverage only. Third, PIC challenges the court's decision to call appellate counsel prior to dismissing the doctors and clinic, and contends the notice of their dismissal was inadequate. Finally, PIC contends the court erred when it failed to offset the damage award by the amounts paid by the subrogated insurer. We address each argument in turn.

205

## I. The Default Judgment

¶ 10. The circuit court decisions whether to grant a default judgment and whether to a grant a motion to enlarge time are reviewed under an erroneous exercise of discretion. *Binsfeld v. Conrad*, 2004 WI App 77, ¶ 20, 272 Wis. 2d 341, 679 N.W.2d 851 (default judgment); *Rutan v. Miller*, 213 Wis. 2d 94, 101, 570 N.W.2d 54 (Ct. App. 1997) (enlargement of time). We affirm discretionary decisions provided they are based on the facts of record, the appropriate law, and the court's reasoned application of the correct law to the relevant facts. *Binsfeld*, 272 Wis. 2d 341, ¶ 20.

¶ 11. WISCONSIN STAT. § 802.06(1)[2] requires a defendant to serve an answer within forty-five days of being served with the complaint. Time periods set by statute may be enlarged upon motion. WIS. STAT. § 801.15(2)(a). However, "[i]f a motion is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect." *Id.*

¶ 12. Excusable neglect "is conduct that 'might have been the act of a reasonably prudent person under the same circumstances.' " *Binsfeld*, 272 Wis. 2d 341, ¶ 23 (citation omitted). It is not the same as neglect, carelessness, or inattentiveness. *Connor v. Connor*, 2001 WI 49, ¶ 16, 243 Wis. 2d 279, 627 N.W.2d 182. The burden of establishing excusable neglect is on the party moving for the extension. *Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc.*, 2002 WI 66, ¶ 50, 253 Wis. 2d 238, 646 N.W.2d 19.

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 13. PIC's fundamental complaint is that "the court's entry of default judgment, without finding, or even considering, whether Plaintiffs were prejudiced constitutes clear reversible error." PIC cites four cases for its proposition that the court must find prejudice to enter a default judgment. We are not persuaded.

¶ 14. First, we note that the principal case on excusable neglect states that "when the circuit court determines that there is no excusable neglect, the motion [to enlarge] must be denied." *Williams Corner Investors, LLC v. Areawide Cellular, LLC*, 2004 WI App 27, ¶ 19, 269 Wis. 2d 682, 676 N.W.2d 168 (citing *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982)). This is in line with the statutory declaration that a motion to extend time "shall not be granted unless the court finds . . . excusable neglect." WIS. STAT. § 801.15(2). Nothing in PIC's citations convinces us that prejudice is to be considered absent a finding of excusable neglect.

¶ 15. PIC first cites *Split Rock*, 253 Wis. 2d 238, ¶ 33, to argue "prejudice must be considered and found before the court weighs default judgment as a sanction for failure to file promptly." However, *Split Rock* addressed the sanction for failure to comply with the *filing* requirement of WIS. STAT. § 801.14(4), which states filing of papers must be accomplished within a "reasonable time" after serving them. *Id.*, ¶ 30. Here, however, the question is about PIC's failure to timely *serve* an answer under WIS. STAT. § 802.06(1). In fact, the *Split Rock* court recognized a difference between service and filing requirements, commenting, "Courts ought to have authority to impose *a serious sanction for failure to timely 'serve,'* and an appropriate sanction,

however modest, for failure to file, 'within a reasonable time after service.' " *Split Rock*, 253 Wis. 2d 238, ¶ 29 (emphasis added).

¶ 16. PIC next cites *Meier v. Champ's Sport Bar & Grill, Inc.*, 2001 WI 20, ¶ 43, 241 Wis. 2d 605, 623 N.W.2d 94. PIC's parenthetical argues the supreme court upheld the trial court, which "applied proper standard and appropriately considered the harsh consequences of default judgment and the lack of prejudice to the plaintiff." However, the trial court in *Meier* found, and the supreme court agreed, that there was excusable neglect for one defendant's failure to individually answer the complaint against him. *Id.*, ¶ 44. That is, the court made the threshold finding required by *Hedtcke* and the statute. *See Meier*, 241 Wis. 2d 605, ¶ 41. The supreme court also wrote, *"In addition to finding excusable neglect,"* the trial court must consider the interests of justice. *Id.* (emphasis added). This phrasing is consistent with the notion that the court must first actually find excusable neglect and only then should it consider the interests of justice.

¶ 17. PIC's reliance on *Connor*, 243 Wis. 2d 279, is not persuasive. PIC claims the supreme court upheld a "grant of default judgment and denial of motion to vacate judgment where the trial court considered the 'relevant interest[]' of prejudice to plaintiff caused by late answer." First, *Connor* noted, in no fewer than four places, that there was no excusable neglect. *Id.*, ¶¶ 19–20, 22, 25. Moreover, the reference to "relevant interest" appears in the discussion of the motion to vacate. *Id.*, ¶ 34. Although the motion to vacate was related to the default judgment, nothing about *Connor* instructs that a finding of prejudice is a prerequisite to a default judgment.

¶ 18. Finally, PIC cites *Rutan*, 213 Wis. 2d at 102, suggesting that case holds the court must consider interests of justice when determining whether to grant a motion to extend time and that the court must consider whether the opposing party has been prejudiced. In *Rutan*, this court reversed a default judgment after holding there had been excusable neglect. Although we wrote that, in determining whether to grant relief, "the court must also look beyond the causes for neglect to the interests of justice," this statement presupposes a finding of excusable neglect. *Id.* at 101.

¶ 19. For all its argument, what PIC fails to attempt, much less accomplish, is to demonstrate that its failure to timely serve an answer was the result of excusable neglect. It mentions in passing that some sort of typographical error occurred preventing PIC from being included in the caption of documents produced by DuBeau's office. Even if this error were excusable in the first instance, Otto points out it was repeated at least thirteen subsequent times. PIC does not attempt to show how this is excusable neglect, as differentiated from "neglect, carelessness, or inattentiveness." Indeed, failure to proofread pleadings would seem to be one of the more obvious examples of carelessness within the legal profession.

¶ 20. Otto further points out that PIC offered no evidence of what happened to the summons and complaint once they were served on the vice-president of claims. While there might be some series of facts that could give rise to a finding of excusable neglect explaining why it took from November to August to ascertain that PIC was required to file an answer, PIC never offers any facts for our consideration.

¶ 21. Quite simply, in the absence of excusable neglect, the court is not obligated to address the interests of justice. The court found no excusable neglect, and there is almost no effort by PIC, save for a conclusory statement that it existed, to show excusable neglect on appeal. Thus, the court did not err by refusing to consider the interests of justice prior to entering the default judgment.[3]

## II. The Effect of the Default

¶ 22. After the court held PIC in default, the company asserted that the true effect of the default should be only to establish insurance coverage. PIC argued the default could not be used to establish negligence—and, therefore, would not automatically trigger payment—because the doctors and clinic had properly answered, denying negligence.

■

¶ 23. Wisconsin is a direct action state. WISCONSIN STAT. § 632.24 states:

> Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the

---

[3] PIC also argues that the default judgment was improper because Otto waived a right to seek it by continuing to litigate the matter for over a year past the answer's due date. PIC offers little authority for its proposition. It cites *Frings v. Donovan*, 266 Wis. 277, 63 N.W.2d 105 (1954), where the court held the plaintiff waived the right to a default judgment. However, that case had proceeded to trial and the jury had returned a verdict. Only in postverdict motions did the plaintiff seek a default judgment. Indeed, *Frings* also states that if the plaintiff were going to insist on entitlement to a default judgment, "a formal motion should have been made prior to the time the case went to trial." *Id.* at 280. Here, a formal motion was made before trial.

amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.

Under this statute, an insured is not a necessary party—a suit may proceed against an insurance company only. *See Loy v. Bunderson*, 107 Wis. 2d 400, 421, 320 N.W.2d 175 (1982).

¶ 24. In the amended complaint, Otto alleged, in relevant part:

24. As a result of Defendant Dr. Folkestad's aforesaid negligence, Defendants Dr. Folkestad, Physicians Insurance Company of Wisconsin, Inc. and Wisconsin Patient's [sic] Compensation Fund are directly liable to Plaintiffs in an amount to be proven at trial.

. . . .

30. As a result of Defendant Dr. Witt's aforesaid negligence, Defendants Dr. Witt, Physicians Insurance Company of Wisconsin, Inc. and Wisconsin Patient's [sic] Compensation Fund are directly liable to Plaintiffs in an amount to be proven at trial.

. . . .

47. Based on the aforesaid negligence of Dr. Folkestad and Dr. Witt, and based on the doctrine of *respondeat superior*, Red Cedar Clinic, Physicians Insurance Company of Wisconsin, Inc. and The Fund are directly liable to plaintiffs . . . .

Paragraphs 24 and 30 were part of Otto's allegations of medical negligence against each doctor; the allegations were repeated in paragraphs 37 and 44, where Otto

211

alleged informed consent violations. All five paragraphs, however, allege that PIC is directly liable to Otto for damages.

¶ 25. The effect of the court striking PIC's answer is that PIC failed to deny these allegations and, therefore, is deemed to have admitted them. *See* WIS. STAT. § 802.02(4); *Martin v. Griffin*, 117 Wis. 2d 438, 444, 344 N.W.2d 206 (Ct. App. 1984). That is, the allegations in the complaint are taken as true as to PIC. *See Leonard v. Cattahach*, 214 Wis. 2d 236, 250, 571 N.W.2d 444 (Ct. App. 1997). In this case, then, it is taken as true that PIC is directly liable to Otto for the full extent of his damages.

¶ 26. Although PIC claims the insureds' answers should inure to its benefit, it cites no Wisconsin law for such a proposition. Such a proposition would be contrary to the direct action statute—insurers whose insureds were also named would not be required to answer a complaint while companies named alone would have to respond. This result would create unpredictability for insurers; a more logical rule is that they must always respond. Moreover, nothing in the statutes suggests one party's answer should benefit another. WISCONSIN STAT. § 802.09(1) states: "A party *shall* plead in response to an amended pleading . . . ." (Emphasis added.) When "shall" is used in a statute, it is generally presumed to be mandatory.[4] *Pool v. City of Sheboygan,*

---

[4] To the extent PIC suggests that making it fully liable invites inconsistent results, PIC's concerns are hypothetical. It argues that by holding it entirely liable, we fail to account for the possibility that the doctors and clinic could be found not negligent. However, that cannot happen here because the doctors and clinic have been dismissed from the case. We avoid

212

2006 WI App 122, ¶ 10, 293 Wis. 2d 725, 719 N.W.2d 792, *aff'd*, 2007 WI 38, 300 Wis. 2d 74, 729 N.W.2d 415.

## III. Dismissal of the Doctors and Clinic

¶ 27. PIC's third complaint is that it lacked sufficient notice that the other defendants were being dismissed.[5] "A party in default for failing to answer forfeits its due process right to notice of further pleadings." *Ness v. Digital Dial Commc'ns, Inc.*, 227 Wis. 2d 592, 602, 596 N.W.2d 365 (1999). When a party defaults by failing to answer, it essentially "halts the action at the point in time" of the corresponding complaint. *See id.* at 602–03. Accordingly, while "pleadings" generally refers to a complaint and an answer, we see no reason why this rule should not apply to all matters subsequent to the default. PIC cites no Wisconsin law supporting its basic argument that, after a party is defaulted, it should continue to have a say in proceedings against the other parties. Indeed, such a notion runs counter to our "long-standing preference . . . for parties who have met their burden and are in good standing, over those who have failed to meet their burden and are in default." *Id.* at 605. The court was not required to give PIC notice, or consult it, about the other parties' dismissal.[6]

deciding cases on hypothetical facts. *See Pension Mgmt., Inc. v. DuRose*, 58 Wis. 2d 122, 128, 205 N.W.2d 553 (1973).

[5] PIC also complains about the unorthodox contact with then-yet-to-be-retained appellate counsel. However, for purposes of this analysis, that event is irrelevant.

[6] PIC cites *Dunn v. Fred A. Mikkelson, Inc.*, 88 Wis. 2d 369, 377, 276 N.W.2d 748 (1979), for the proposition that the court should not permit the plaintiff to voluntarily dismiss a defen-

## IV. Offset

¶ 28. PIC claims an entitlement to an offset of $42,635.26, the amount paid by Blue Cross & Blue Shield of Nebraska. The court denied the motion. Resolution of this question pits the nature of subrogation against the collateral source rule.

¶ 29. "By virtue and to the extent of payments made on behalf of another, a subrogated party obtains a right of recovery against a third-party tortfeasor . . . ." *Koffman v. Leichtfuss*, 2001 WI 111, ¶ 33, 246 Wis. 2d 31, 630 N.W.2d 201. "Subrogation exists to ensure that the loss is ultimately placed upon the wrongdoer and to prevent the subrogor from being unjustly enriched through a double recovery, *i.e.,* a recovery from the subrogated party and the liable third party." *Id.*

¶ 30. The collateral source rule provides that an injured party's recovery against the tortfeasor should not normally be reduced by payments received from other sources "collateral" to the tortfeasor. *Lambert v. Wrensch*, 135 Wis. 2d 105, 111 n.5, 399 N.W.2d 369 (1987). The rule is grounded in long-standing policy. "[S]hould a windfall arise as a consequence of an outside

---

dant over the objection of remaining defendants unless the court is satisfied there will be no prejudice to the remaining defendants. We think PIC mischaracterizes *Dunn*. That case did not deal with a default situation but, rather, a group of defendants seeking attorney fees as a condition of the plaintiff dismissing its case without prejudice instead of filing a third amended complaint. ·*Id.* at 374–75. However, even PIC's misstatement of the case is unavailing: PIC would not be considered a "remaining defendant" because the default judgment effectively removed it as a party, finishing litigation with respect to that company.

payment, the party to profit from that collateral source is 'the person who has been injured, not the one whose wrongful acts caused the injury.' " *Koffman*, 246 Wis. 2d 31, ¶ 29 (citation omitted).

¶ 31. Ordinarily, subrogation and the collateral source rule work together. Subrogation prevents double recovery by a plaintiff while the collateral source rule prevents payments made by an insurer from benefiting the defendant. *Id.*, ¶ 40. However, "where the insurer is barred from pursuing a claim [of subrogation], the tortfeasor is entitled to a reduction in judgment for the amount of that claim." *Id.*, ¶ 39 (citing *Voge v. Anderson*, 181 Wis. 2d 726, 732, 512 N.W.2d 749 (1994) (construing *Lambert*)). In such a situation, the risk of double recovery by the plaintiff, from both the insurer and the tortfeasor for the same injury, defeats the collateral source rule. *See Koffman*, 246 Wis. 2d 31, ¶ 37. Indeed, Wisconsin courts recognize a plaintiff should be made whole, but no more than whole. *See Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 272, 316 N.W.2d 348 (1982).

¶ 32. Otto contends, however, that unlike those prior cases, particularly *Lambert*, Blue Cross lost its subrogation right through a default judgment, not the running of the statute of limitations. Therefore, it asserts the rule from *Lambert*, as discussed in *Koffman*, should not apply. We decline to address this argument. Rather, we note that at the time judgment was entered against PIC, the statute of limitations had run on Blue Cross's subrogation claim. We therefore hold that when judgment is entered against a tortfeasor, if a concomitant subrogation claim is time-barred because the statute of limitations has run, the *Lambert-Koffman* rule

215

applies to invalidate the collateral source rule. Thus, PIC is entitled to an offset for the subrogated amount. On remand, the clerk of courts shall adjust the judgment accordingly by subtracting $42,635.26 from the judgment against PIC.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. No costs on appeal.